[No. 2936. Decided July 1, 1898.]

PETER ANDERSON, *Respondent*, v. INLAND TELEPHONE AND TELEGRAPH COMPANY, *Appellant*.

MASTER AND SERVANT — INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE — ELECTRICAL APPLIANCES.

A lineman in the employ of a telephone company, among whose duties was the inspection of poles and wires, and who was equipped with apparatus for testing electric insulators, was chargeable with contributory negligence, as the direct cause of injuries received while climbing a pole used jointly by the telephone company and an electric railway, by reason of his coming in contact with a guy wire supporting a trolley wire, which had

become highly charged with electricity, owing to the breaking of an insulator, when by the exercise of care on his part he could have learned of the danger.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Reversed.

Blake & Post, for appellant.

Wirt W. Saunders, and W. J. Thayer, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The respondent, a servant of the Inland Telephone & Telegraph Company, brought an action against the said telephone company and the Spokane Street Railway Company. The complaint alleges that at the time the accident occurred, the plaintiff was a lineman in the employ of the Inland Telephone & Telegraph Company; that the two defendants used in common a pole located on the corner of Olive and Hamilton streets, in the city of Spokane; that the telephone company used said pole for holding up telephone wires, and the street railway company had fastened to said pole a span wire or guy wire, which ran to the pole from the trolley wire used by the street railway company; that the plaintiff ascended said pole for the purpose of stringing a wire on the pole, and, while on the pole, came in contact with the span wire belonging to the street railway company, touched the same, received an electric shock, and fell to the ground, breaking his leg as a result of said fall; that the wire which plaintiff touched, which belonged to the street railway company, was not designed or intended to carry electricity, but was used as a support for the trolley wire used by said street railway company, but through the careless and negligent acts of the street railway company, said wire was at the time charged with a strong current of electricity, and was negligently left by the street railway company uninsulated,

and in a dangerous and unsafe condition;   that both of the defendants knew, and by the exercise of reasonable care might have known, and that plaintiff did not know, and by the exercise of reasonable care could not have known, the fact that said wire was charged with electricity.   Upon the trial of the cause, by stipulation, the street railway was dismissed from the action, and a judgment was obtained against the appellant, the Inland Telephone & Telegraph Company.   From such judgment this appeal is taken.

The contention of the respondent is that it is the duty of the master to furnish the employé with a safe place to work, and with safe and suitable machinery or appliances, and that this duty is a continuing one, which· is imposed upon the master during employment.   There is no doubt that this proposition of law is a correct one, and it may be stated as a corollary to the proposition enunciated above, that the law charges the master with knowledge which he ought to have had;   and it is settled law that he ought to know that which by the exercise of reasonable care he would have discovered.   Also, it may be accepted as universally conceded law that the responsibility of the master cannot be transferred to another, and that when a duty is imposed upon him, and another is employed by him to perform that duty, the negligence of the agent will be imputed to the master.   But this case must be considered with reference to another universally accepted proposition, viz., that, when a servant enters into an employment which is necessarily hazardous, he will be presumed to have assumed all the ordinary risks incident to such service; and the fact that the service is necessarily a dangerous one does not increase the master's liability if the injury resulted from the natural and ordinary incidents of the undertaking, presuming, of course, that the servant is a person of mature years and common understanding.   The trouble

in this case is not so much to determine what the law is in regard to the duties of master and servant as it is to apply the law to the group of circumstances in the case. It is the insistence of the appellant that, under the circumstances of this case, there was no duty resting upon the master to inspect the insulator which was the cause of the current flowing from the trolley wire to the span wire. It may be stated here that the insulator, which was a porcelain one, broke, by reason of which the guy wire came in contact with the charged wire of the railway company, and this guy wire, being attached to the post which the respondent was climbing, was the wire with which he came in contact. We have examined with particular care both the record in this case, and the cases cited by respondent and appellant, and all other authority bearing upon the case which we have been able to find, but have not been able to find a case exactly in point, it being conceded by the authorities generally that the proper application of well-known principles governing the responsibilities of masters depends largely upon the circumstances of each case. But, from such an investigation as we have been able to make, we are forced to the conclusion that no absolute duty rested upon the master in this case to prevent the charging of this guy wire, or, in other words, to preserve inviolable the insulators, so far as the safety of the respondent is concerned. The respondent here was a lineman, and had been in the employ of the company for something over two years, working first as a groundman, and for two years or more had been working as a lineman.

It is contended by the respondent that the question of whether or not the respondent was an inspector is a question of fact, upon which the testimony is conflicting, and that, therefore, the verdict of the jury upon that proposition is binding upon the court. We think, in any event,

the judgment would have to be reversed by reason of the instructions given by the court; but, with the view that we take of the master's liability under the undisputed testimony, it will not be necessary to notice these errors. It is true that the respondent testified that he was not an inspector, and that he also testified, notwithstanding the fact that he had alleged in his complaint that he was a lineman, that he was not a lineman; but the testimony was evidently with reference to a definition or a statement of the lineman's duty as given by Mr. Hopkins, the superintendent of the telephone company, and the later testimony, not only of the appellant, but of the respondent and his witnesses, shows conclusively, it seems to us, that, while not nominally an inspector, the duties of a lineman embraced the duties of an inspector. Corporations of this kind act through employés. Necessarily they cannot act in any other way. An inspection of their lines and posts and insulators must be made by the employés. In this case it is an admitted fact that there was no regular inspector and no inspectors other than the linemen. It is true that some of the railroad cases cited by the respondent decided that it was the duty of the company under certain circumstances to have inspectors, but we think none of those cases are in point here. In this case the respondent and the other linemen testified that they knew that the line or wire which occupied the insulator jointly with the wire with which respondent came in contact was charged with electricity. The respondent testified that he knew the power of electricity, and the danger that would be incurred by coming in contact with a live wire; that he knew that, if the insulator broke, the result would be that the wire which he touched would be charged; and he knew also that porcelain insulators frequently did break. It seems to us that this brings him within the rule which we have

announced above—that when he accepted the employment, that was necessarily hazardous, he assumed this risk, which, under all the testimony, was an ordinary risk, and that he did not exercise the discretion which he ought to have exercised in testing this wire. The testimony shows that, shortly after the accident, one of the appellant's witnesses, Mr. Dart, observed the insulator, and separated it from the wires, and it was made an exhibit in court. He also testified that the insulator when it was exhibited was in the same condition that it was immediately after the accident, when he first discovered it. About one-half of the insulator was gone, and there was some contention developed in the trial as to whether the broken part of the insulator was towards the post which respondent climbed; and it was conceded this might have been detected by a lineman who was accustomed to looking at such things, if the broken part of the insulator had been next to the post. We think, and such was the opinion of the lower court who heard the testimony, that it is demonstrated that it was a physical impossibility for the broken part of this insulator to have been in the opposite direction from the post without making a complete insulation. This, therefore, must be considered an established fact in the case. The respondent says that he glanced at the insulator when he went to ascend the post, but did not give it any particular attention, and did not make any test. The testimony of the other linemen was—and it is not controverted—that linemen carried apparatus by which they could test insulators, and that they understoood that they had to look out for themselves so far as danger was concerned. It appears from the testimony that the respondent must have known that no other inspector was kept by the company, and, even if there had been, it is impracticable for an inspector to make tests that would protect

workmen at all times.  An inspector cannot be maintained at every insulator.  An insulator might be tested and found sound at one hour of the day, and the next hour it might be broken, so that it would not insulate the wires, and the only way in which workmen could be protected would be to make these tests themselves;  and it was testified in this case by the respondent that it would only have required a moment's time.  While there is no gainsaying the rule that under ordinary circumstances the employé has the right to rely upon the fact that the master will furnish him a safe place to work and safe appliances, yet the law does not intend that this shall be a blind and unreasonable reliance, but that reasonable men shall exercise in a reasonable manner the faculties of which they are possessed. It seems to us it would only have been such reasonable exercise of prudence upon the part of the respondent in this case to have tested this wire before he touched it.

While there has been possibly some conflict in authority over cases which, in principle, were something like the case at bar, we think the great weight of authority sustains the view which we have taken.  The first case cited by appellant—*Flood v. Western Union Telegraph Co.*, 131 N. Y. 603 (30 N. E. 196)—was an action for the death of the servant while working as lineman on the telegraph pole, caused by leaning his weight on one of the cross-arms, so that it broke, causing him to fall.  The court there decided that the defendant's inspectors (and it seems conceded in that case that they had inspectors) were not required to climb each pole, and examine the arms;  and the deceased knew this, having been employed by defendant for several years, part of the time as inspector, and the rest of the time as a lineman.  The court, among other things, said:

" The linemen all discharge their duties in the daytime.

They have frequent occasion to climb the poles, and work about the arms, ·and obviously they are the persons who are expected to see the condition of the arms, and, if they find them insufficient, to replace them, or to report the fact."

And so in this case it was the linemen, and the linemen only, who were in the habit of climbing these poles; and under the undisputed testimony, there being no one else to inspect them, it was the duty of the linemen, before taking hold of the wire which might become dangerously charged with electricity, to test the same. So well understood are the general duties of a lineman, and the opportunities which he has for examining the poles and the instruments with which he works, that it was held in *McGorty v. Southern New England Telephone Co.*, 69 Conn. 635 (38 Atl. 359; 61 Am. St. Rep. 62), that a lineman in the employ of the telephone company could not recover for an injury caused by a fall of a pole upon which he was at work, notwithstanding a prior statement by the foreman that he had been up the pole, and that it was safe, where plaintiff knew that it was the rule and custom for each lineman to test the pole for himself, and that suitable appliances were at hand for making such test, and for securing the pole in case the lineman doubted its safety. It seems to us that the circumstances of this case are parallel with the circumstances surrounding the case at bar, although there is an attempt by respondent in his brief to distinguish them. It was true that the trial court found in that case " that it was the rule and custom, in this branch of the work, that ' each lineman should look out for his own safety in climbing poles ' "; but the undisputed testimony in this case is to the same effect. *Bergin v. Telephone Co.*, 70 Conn. 54 (38 Atl. 888), was a case where a telephone company and an electric railroad

company used the same pole for their wires; and the court held that the law did not absolutely require the telephone company, as between it and its linemen, to inspect and test guy wires and circuit breakers put in by such railroad company, to discover whether they were in a safe condition, but whether the employer or employé should discharge such duty depended upon the circumstances of the particular case. In commenting on the testimony in that case, the court said:

"Linemen are employed by the telephone company, among other things, for the purpose of doing work which is dangerous, by reason of the possible contact of the telephone wires with highly charged wires of the street railway or other companies. The linemen are to do their own testing in such work. The telephone company has no other men than the linemen to do the testing, as the linemen knew; and there was nothing to prevent Delaney [who was the plaintiff in the case] from testing the guy wire, and the linemen on this job were furnished with all the tools, appliances and wires with which to test wires of the electric street railway company."

This case seems to us in principle to be almost parallel with the case at bar. It is insisted by the respondent that the first case cited *(Flood v. Telegraph Co., supra)* is inconsistent with the previous case in the same court (viz., *Bushby v. New York, L. E. & W. R. R. Co.,* 107 N. Y. 374, 1 Am. St. Rep. 844, 14 N. E. 407), in which it was held that the defendant was liable to a brakeman on account of a wooden stake breaking because of a latent defect. We think the circumstances of this latter case were altogether different, and it was evidently considered by the court deciding the case of *Flood v. Western Union Telegraph Co., supra,* that no inconsistent principles were applied in the two cases, for the former case is not overruled or mentioned in the latter opinion. *Dixon v. Western*

*Union Telegraph Co.*, 68 Fed. 630, was a case where the plaintiff was an employé of the telegraph company, and, when engaged with others in stringing wires on its poles, was instructed to climb a pole belonging to another company, to get certain wires out of the way. While descending, after performing the work, he fell, in consequence of one of the spikes being insufficiently secured. It was held that the danger from which the accident resulted was one of the risks of plaintiff's employment, which was assumed by him, and for which his employer was not liable. That case, however, is not as strong a case in favor of the master as the case at bar, for there the plaintiff was directed by the foreman, who was at the time acting for the defendant. The court laid down the rule in that case as follows:

" The employer is not an insurer of the safety and sufficiency of the tools, machinery, or appliances furnished to the employé for his use, nor is he a guarantor of the safety of the place where or upon or about which the employé is required to work. The duty cast by law upon the employer is to use ordinary and reasonable care to furnish safe and sufficient tools, machinery, and working places. If he has done this, he has performed the full measure of his duty. The employé, in order to recover for defects in the appliances or working places of the business, must allege and prove that the appliance was defective, or the working place insecure; that the employer had notice or knowledge thereof, or that, by the exercise of ordinary and reasonable care, he might have had such notice or knowledge; and that the employé did not know of the defect, and had not equal means of knowing with the employer."

The last sentence in this proposition must be given as much force as the preceding ones; for if the employé does know of the defect, or has equal means of knowing with the employer, then, certainly, it is his unquestioned duty to investigate before proceeding. In *Griffin v. Ohio*

& M. Ry. Co., 124 Ind. 326 (24 N. E. 888), the rule was announced that, " where the danger is alike open to the observation of all, both master and servant are upon an equality, and the master is not liable for an injury resulting from the dangers of the business." In this case, certainly, the danger was not only as open to the observation of the respondent as it was to the master, but the undisputed testimony shows that the master obtained his knowledge of the danger through the respondent and his fellow servant. In *Larsson v. McClure*, 95 Wis. 533 (70 N. W. 662), it was held that, "when the danger is alike open to the observation of all, both the master and the servant are upon an equality, and the master is not liable for an injury resulting from the dangers incident to the employment." In *Bedford Belt Ry. Co. v. Brown*, 142 Ind. 659 (42 N. E. 359), the court said: " Every service has its own peculiar hazards, and the law does not hold the master accountable for such hazards as ordinarily and naturally belong to any service "—and quoted approvingly *Day v. Cleveland, C. C. & St. L. Ry. Co.*, 137 Ind. 206 (36 N. E. 854), where it was said:

" In a case where the servant is one of mature age and experience, as in this case, the law never imposes the duty on the master of becoming eyes and ears for his servant, where there is nothing to prevent the servant from using his own eyes and ears to avoid danger. . . . The law requires that men shall use the senses with which nature has endowed them; and, when without excuse one fails to do so, he alone must suffer the consequences, and he is not excused where he fails to discover the danger if he made no attempt to employ the faculties nature has given him."

The rule is thus announced in Wood, Master & Servant, § 328:

" When a servant is employed upon work which, equally within the knowledge of the master and the servant is of a

dangerous nature, the master is not liable for the consequences of an accident occurring to the servant in the course of that. employment, unless there be negligence on the part of the master, and the absence of rashness on the part of the servant. A servant is bound to exercise his own skill and judgment, so as to protect himself in the course of his employment, and the master is not regarded as warranting, generally, his safety. He is himself bound to exercise proper care, and cannot claim indemnity from the master for an injury resulting to him which might have been prevented if he had himself been reasonably vigilant."

Substantially the same principle is announced in § 366, viz.:

" A master is not liable for injuries to his servant while using machinery in the employment, if the servant has the same knowledge of its defects, or the danger incident to its use, as the master, or if in the exercise of due care, he ought to have such knowledge, and, at or before the time the accident occurred, there was nothing to indicate any danger such as demanded or suggested precautions which were omitted by the master."

In this case it was equally within the knowledge of the master and the servant that this was a dangerous employment, and it cannot be said that there was negligence on the part of the master, and absence of rashness on the part of the servant, or that the servant used his skill, to protect himself in the course of his employment. He had sufficient skill, according to the undisputed testimony, to protect himself, and he had the apparatus at hand for testing the insulator and the wires.

" If the servant is to recover damages," says Mr. Beach, in his work on Contributory Negligence (§ 299), " he, like any other plaintiff, comes into court under the legal obligation of showing, or having it sufficiently appear, that his own negligence has contributed in no legal sense to the injury."

And in § 346 of the same work it is said:

"Knowledge on the part of the employer, and ignorance on the part of the employé, are of the essence of the action; or, in other words, the master must be at fault and know of it, and the servant must be free from fault and ignorant of his master's fault, if the action is to lie. The authorities all state the rule with these qualifications."

There is a wilderness of authority to the same effect, but it would serve no good purpose to reproduce it here. We have examined with patience the authorities cited by the respondent, and, except in one or two cases, notably cases with reference to damages arising from the falling of posts, which we think are in conflict with the cases cited on that subject by the appellant and noticed above, they are not in point. In all of them it appeared that the injury was caused by defects or dangers which were not apparent to the servant, or which would not have been apparent to him if he had exercised ordinary care—such care as was consistent with the dangers incident to the employment. The citation from 7 Am. & Eng. Enc. Law, p. 830, to the effect that "it is the duty of a master, not only in the first instance to make reasonable efforts to supply his employés safe and suitable machinery, tools, etc., but also thereafter to make like efforts to keep such machinery, etc., in safe and serviceable condition; and to that end he must make all needed inspections and examinations," and 2 Bailey, Master & Servant, §§ 2619, 2620, to the same effect, are, of course, accepted as the law; but we do not think that acceptance will avail the respondent in this case, for the reason, as we before intimated, that these tests were made through the linemen for this company. The same rule is announced in *Comben v. Belleville Stone Co.*, 59 N. J. Law, 226 (36 Atl. 473), cited by appellant, where it is announced that the rule is

subject to the qualification that the servant is without knowledge of the danger, and cannot observe and acquire the knowledge in the exercise of ordinary care in the employment. This qualification of the rule runs through all the cases.

The respondent alleges in his complaint that the plaintiff did not know, and by the exercise of reasonable care could not have known, the fact that said wire was charged with electricity. By this allegation he recognized the principle of law which we have just enunciated, and it was necessary for him to make this fact appear. We think, from an investigation of the whole case, that it appears from undisputed testimony that plaintiff did not exercise reasonable care in the investigation of the dangers which he knew were incident to his employment, and that had he exercised such care, and made the tests which reasonable prudence would have dictated, he would have had knowledge of the danger which beset him. The accident was unfortunate, and the result most lamentable; but, with our view of the law governing the case, the judgment must be reversed, and the cause is remanded to the lower court, with instructions to dismiss the same.

SCOTT, C. J., and GORDON, REAVIS and ANDERS, JJ., concur.