[No. 3770.   Decided April 13, 1901.]

ANTOINE ROBARE, *Respondent*, v. SEATTLE TRACTION COMPANY, *Appellant*.

MASTER AND SERVANT — ASSUMPTION OF RISK — APPARENT DANGERS — CONTRIBUTORY NEGLIGENCE.

An employee, injured by the the giving way of a tie of a trestle and being precipitated into the water beneath, is chargeable with contributory negligence, where defendant was engaged in repairing the trestle by drawing new piles, laying new stringers and ties, where necessary, and laying new rails; and, in or-

der to drive new piles, the ties had been cut out at intervals, a fact which was known to all the workmen, and was a danger that was apparent and against which the foreman had frequently warned the workmen; and the injury to plaintiff was the result of his having stepped upon one of these shortened ties, while engaged in the work of pulling and gathering the spikes which held the rails to the ties.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Reversed.

*Preston, Carr & Gilman,* for appellant:

A structure which is being torn down, or re-built, or one which is in process of erection, and on which servants are engaged, is not a place to work within the rule requiring the master to furnish his servant with a reasonably safe place in which to work. *Allen v. Galveston, etc., Ry. Co.,* 37 S. W. 171; *McCann v. Kennedy,* 44 N. E. 1055; *Carlson v. Oregon Short Line, etc., Ry. Co.,* 28 Pac. 497; *Clark v. Liston,* 54 Ill. App. 578; *Moore v. Pennsylvania R. R. Co.,* 31 Atl. 734; *Carey v. Sellers,* 6 South. 813; *Armour v. Hahn,* 111 U. S. 313 (28 L. ed. 440); *Bcique v. Hosmer,* 48 N. E. 338; *Richardson v. Anglo-American Provision Co.,* 72 Ill. App. 77; *Jennings v. Iron Bay Co.,* 49 N. W. 685; *Callan v. Bull,* 45 Pac. 1017; *McCone v. Gallagher,* 44 N. Y. Supp. 697; *Marsh v. Herman,* 50 N. W. 611; 2 Bailey, Personal Injuries, § 3024.

*John E. Humphries* and *Harrison Bostwick,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an appeal from a judgment of $2,000 obtained for personal injuries. At the close of the plaintiff's testimony, motion for a non-suit was asked and refused. We think this motion should have been granted.

The defendant was operating a line of electric railway crossing Lake Union, in King county. The railway was constructed upon piles driven in the lake. Upon the piles were placed timbers known as stringers, and upon the stringers ties were placed, running at right angles to the course of the railway. The piles, stringers, and ties were secured by bolts and spikes. The boulevard across the lake consisted of a roadway for wagons and other vehicles, a footway for passengers, and two tracks of railway. That portion of the structure occupied by the railway had become old and dangerous, and needed repairing, and the undertaking was to repair without discontinuing traffic over the road. Holes were sawed in the ties, and the ties were cut out when necessary, leaving spaces of from two to three feet square, so that a pile driver could be operated for the purpose of driving other piles. These piles were driven in a row at right angles with the trestle, and between the old bents where the old piles had been. The pile driver was operated on a car, and drawn along on the track, and the piles were pulled up through these holes from the water below, and driven there. Then they were prepared and placed in proper position, and the old stringers, or those of them that were in good repair, were placed upon them, reinforced with new stringers alongside of the old ones, and new ties were placed upon top wherever the old ties were unfit for use. The old rails were moved off the structure, the spikes were pulled up, and new rails put in place of them. The work of rebuilding the structure was carried on by both day and night. The plaintiff was employed on a night force as a common laborer. He was working with a gang of eight men, and their duty was to pull and gather up the spikes which held the rails to the ties, and remove the old rails from the ties. They were followed by another gang, who

replaced the old ties with new ones, and laid new rails upon the ties. In the performance of his duty in pulling up and gathering the spikes the plaintiff stepped upon a tie, which gave way, and precipitated him through the trestle, by which he received the injuries complained of.

We think, upon the testimony of respondent and his witnesses, that he cannot recover. The exact manner in which the tie upon which the respondent stepped was severed from the rest of the structure is not disclosed by the testimony.. The respondent's testimony is exceedingly meager. All that he says upon the subject is as follows:

"Q. What happened to you that night?

A. Well, sir, I was picking up spikes at one o'clock, after we ate our lunch; probably had been working two or three minutes at the time, and as I walked on to one of the short ties, the short tie gave way and let me down and struck my elbow first and my side..

Q. Which elbow was struck?

A. This one right here. And it struck my side, knocked the breath out of me; I could not talk for a long time. If it hadn't been that my elbow struck first, it would have killed me dead.

Q. Did you know anything about there being a short tie there before you fell?

A. No, I did not.

Q. Did you know anything about that tie not being supported or braced?

A. No, sir, I did not."

Then the witness passes to a consideration of his hurts. Another witness testifies, when asked how wide a space had been cut out of the center of this tie, and having stated that the tie had been cut in the center:

"I could not tell you that, because I didn't see the tie before he fell in, and it might have been right together, and there might have been an inch or two. I seen the other end of the tie sticking half way across, and the tie

that he stepped on went into the lake, and we did not look for that."

While there is a great deal of testimony, this is the substance of the testimony in relation to the condition of the tie upon which the respondent stepped.   He must necessarily have known that the tearing down and building up of an old structure of this kind was a dangerous occupation.   While it was in the night, the testimony shows that it was very light, clusters of electric lights being carried along by the workmen to aid them in seeing the work.   It is also in testimony, by witnesses McGuire, Lindsay, Shenk, Morrison, and Woolery, the first two of whom were plaintiff's witnesses, that the foreman constantly warned the men of their danger, and notified them to look out; and, while the respondent testifies that he did not hear the warning, it seems to us, from the testimony of all the other witnesses, that he ought to have heard it.   In addition to this, he knew of the general condition of the road; knew that these ties had been sawed off at stated intervals for the purpose of driving these piles; and it was his duty to be careful under such conditions, whether he had heard the warning to be careful or not.   The other men who were with him knew of the condition of this road, and the respondent's own witnesses testified that, if a person were paying attention, he could have seen the condition of things. They also testified that the gang in which the appellant was working was not in any way hurried by the overseer; that he was not driving the men at all, or urging them to hurry; and that it was plainly a dangerous place to work.   From the testimony of the respondent alone we are forced to the conclusion that he did not exhibit that care and watchfulness which he should have done under the circumstances, that the danger was apparent, and that the company was, therefore, not responsible for the damages which ensued.

The judgment will be reversed, with instructions to dismiss the case.

REAVIS, C. J., and FULLERTON, ANDERS, and MOUNT, JJ., concur.