[No. 5490. Decided April 22, 1905.]

## JOHN D. SMITH, *Respondent*, v. HECLA MINING COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—INJURY TO MINER—DUTY OF INSPECTING PLACE—EVIDENCE OF CUSTOM AND RULES IN OTHER MINES. In an action by a "mucker" employed in removing rock and debris thrown down by the miners, for injuries sustained through the fall of overhanging rock in a mine, it is incompetent and prejudicial error to receive evidence of the rules or methods of work in other mines in the locality respecting the duties of a "mucker" with reference to inspection and testing the ground for safety, where the witness did not know anything about the rules or methods of work in the mine in question (Dunbar, J., dissenting).

SAME—SAFE PLACE—FALL OF OVERHANGING ROCK—DUTY OF MASTER AND SERVANT—INSTRUCTIONS. In an action for injuries sustained through the fall of overhanging rock in a mine, brought by a "mucker," who was employed in removing rock and debris thrown down by the miners in blasting, at a point where there was a distance of 30 or 35 feet between the last section of timbers and the face of the workings, and who knew that overhead rock, when left for a few days, was liable to "air-slack" and fall, it is error to instruct the jury that the law does not under any circumstances exact from the servant any diligence in ascertaining defects not apparent to his observation, and that he has a right to assume without inquiry or investigation that his master has discharged the duty of furnishing him a safe place in which to work; since the "safe place" rule applies in such a case only in a qualified sense, and the conditions of danger imposing the duty of inspection by the master impose a corresponding duty upon the servant to use his faculties and exercise diligence in ascertaining the condition of his surroundings, and he cannot absolutely assume such a mining place to be a safe place (Dunbar, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered April 20, 1904, upon

1Reported in 80 Pac. 779.

the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by an employee in a mine through the fall of overhanging rock. Reversed.

*Danson & Huneke,* for appellant, in addition to cases reviewed in the opinion, cited, among others: *Paule v. Florence Min. Co.,* 80 Wis. 350, 50 N. W. 189; *Colorado Coal etc. Co. v. Carpita,* 6 Colo. App. 248, 40 Pac. 248; *Green v. Western American Co.,* 30 Wash. 87, 70 Pac. 310; *Breckinridge etc. Syndicate v. Murphy* (Ky.), 38 S. W. 700; *Motey v. Pickle Marble etc. Co.,* 74 Fed. 155; *Overman Wheel Co. v. Griffin,* 67 Fed. 659; *Massie v. Peel Splint Coal Co.,* 41 W. Va. 620, 24 S. E. 644; *Bergquist v. Chandler Iron Co.,* 49 Minn. 511, 52 N. W. 136; *Wells v. Coe,* 9 Colo. 159, 11 Pac. 50; *Timmons v. Central Ohio R. Co.,* 6 Ohio St. 105.

*Robertson, Miller & Rosenhaupt* and *L. O. Whitsell,* for respondent, cited, *inter alia: Union Pac. R. Co. v. Jarvi,* 53 Fed. 65; *Kelley v. Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273; *Eddy v. Aurora Iron Min. Co.,* 81 Mich. 548, 46 N. W. 17; *Miller v. Union Pac. R.,* 12 Fed. 600; *Norfolk & West. R. Co. v. Ward,* 90 Va. 687, 19 S. E. 849, 44 Am. St. 945, 24 L. R. A. 717; *Walker v. Scott* (Kan. App.), 61 Pac. 1091; *Malcolm v. Fuller,* 152 Mass. 160, 25 N. E. 83; *Western Coal & Min. Co. v. Ingraham,* 70 Fed. 219; *Railroad Co. v. Fort,* 17 Wall. 553; *Lafayette Bridge Co. v. Olsen,* 108 Fed. 335; *Taylor v. Star Coal Co.,* 110 Iowa 40, 81 N. W. 249; *Kranz v. Long Island R. Co.* 123 N. Y. 1, 25 N. E. 206, 20 Am. St. 716; *Consolidated Coal Co. v. Wombacher,* 134 Ill. 57, 24 N. E. 627; *Cunningham v. Union Pac. R. Co.,* 4 Utah 206, 7 Pac. 795; *Hoffnagle v. New York Cent. etc. R. Co.,* 55 N. Y. 608; *Linden v. Anchor Min. Co.,* 20 Utah 134, 58

Pac. 355; *Richmond etc. R. Co. v. Powers,* 149 U. S. 43, 13 Sup. Ct. 748; *Trihay v. Brooklyn Lead Min. Co.,* 4 Utah 468, 11 Pac. 612; *Green v. Western American Co.,* 30 Wash. 87, 70 Pac. 310; *Costa v. Pacific Coast Co.,* 26 Wash. 138, 66 Pac. 398; *Shannon v. Consolidated etc. Min. Co.,* 24 Wash. 119, 64 Pac. 169; *Czarecki v. Seattle etc. R. & Nav. Co.,* 30 Wash. 288, 70 Pac. 750; *Wilson v. Alpine Coal Co.,* 26 Ky. Law 337, 81 S. W. 278; *Pantzar v. Tilly Foster Iron Min. Co.,* 99 N. Y. 368, 2 N. E. 24.

Root, J.—Respondent was employed by appellant in a silver and lead quartz mine, situated near the town of Gem, in the state of Idaho. He was engaged as a "mucker." A mucker is one who removes the ore, rock, and debris thrown down by the miners in blasting. His work must be done, in part at least, ahead of the timbering which is to afford protection against the falling of ore, rock, and debris. At the time of the accident, respondent claims that there was a distance of thirty or thirty-five feet between the last section of timbers and the "face of the workings." The timbers were constructed in sections of about five feet in length. Respondent said that he had been working at the same place where he was hurt about two weeks before. There was some evidence that work had been done at this place the second or third day before the accident. Respondent and others testified that the overhead ore and rock would "air-slack" when left for a few days, and was liable, on account thereof, to cave or fall. Respondent testified that he had been at work but a few minutes on the day of the accident when a portion of the overhanging ore and rock fell upon him, causing him great injury. He contends that it was the duty of the appellant to have inspected this working place carefully,

and to have kept it in a safe condition for him; that he had a right to reply upon the performance of this duty of inspection by the master; that the duty was neglected or improperly performed; and that his injury was the direct proximate result of such negligence on the part of the appellant. The trial resulted in a verdict and judgment in favor of the respondent. From this judgment, appeal is taken to this court.

Appellant contends that the evidence is insufficient to support the verdict, and that its motions for judgment, made at the close of plaintiff's case and at the close of the entire evidence, should have been granted. Numerous errors are also assigned as to the introduction of evidence and as to the instructions.

Respondent placed upon the stand a witness by the name of Cook, who had been mining a little over four years, and had worked in four or five different mines. He was asked the following question: "Mr. Cook, you know generally what the rules are among the Coeur d'Alene mines there as to the duties of the shift boss and miners and muckers?" Appellant objected to the question, but the objection was overruled. The witness answered that he thought he did, and, over appellant's objections, answered numerous questions as to the respective duties of the shift boss, miners, and muckers, and as to methods of mining. One of these questions asked him, was as follows: "What is the fact, if you know, when a mucker is sent to a stope to muck, as to his being required to inspect or bar down?" This was objected to, but the objection was overruled, and the witness answered. Another question was: "When a laborer, a mucker, is sent to a stope to muck, is there any obligation upon him, or is he expected to test the ground to see if it is safe?" Objected to, objection over-

ruled, and answer of witness taken. This witness had not worked in the Hecla mine, and was not shown to know anything about appellant's rules or methods. His evidence as to the rules of some other company was immaterial. His evidence as to the respective duties of shift boss, miner, and mucker in appellant's mine was incompetent, as he did not show that he knew anything about the rules, customs, or methods of work employed in this mine. The duty of inspection is imposed as a matter of law. The method by which it is done is a matter resting with the master. He may have it done by the foreman, by the shift boss, by the "mucker" himself, or by any one else, so long as he be competent for the purpose. The master, in performing this duty, is under no obligation to use the same method, or the same officer or workmen, as does some other mining company. Consequently, evidence concerning the rules of certain other mining companies would be immaterial and incompetent to show the respective duties of various employees in appellant's mine. The action of the trial court in admitting such evidence constituted prejudicial error.

Among other instructions, the court gave the following:

"(1) The court instructs you that it is a general rule that a servant entering into employment which is hazardous assumes the usual risks of the service, and those which are apparent to ordinary observation, and when he accepts or continues in the service with knowledge of the character or obstructures from which injury may be apprehended, he also assumes the hazard incident to the situation. Those not obvious assumed by the employee are such perils as exist after the master has used due care and precaution to guard the former against danger and the defective condition of the structures or the appliances which, by the exercise of reasonable care of the master, may be apprehended and obviated, and from the conse-

quences of which he is relieved from responsibility to
the servant by reason of the latter's knowledge of the situa-
tion, if such as is apparent to his observation. It is suf-
ficient to say, however, that the law does not under any
circumstances exact from the servant the use of diligence
in ascertaining such defects, but charges him with knowl-
edge of such only as are open to his observation; beyond
this he has a right to assume without inquiry or investiga-
tion that his employer has discharged his duty of furnish-
ing him with a reasonably safe place in which to perform
his duties."

The meaning of much of this instruction is obscure.
The last part thereof is clearly erroneous. The law *does*
require the servant to use some diligence in ascertaining
defects, and in protecting himself from the dangers to be
reasonably apprehended therefrom—such diligence and
care as a man of ordinary prudence would exercise under
the same circumstances. He must, to protect himself from
injury, use diligence commensurate with the dangers
known by him to be incident to the character and place of
work wherein he is employed. Mining is known to be
dangerous work. Respondent admits that he knew this,
that he knew there was more or less danger from falling
rock, that "air-slacking" was constantly going on, which
loosened the rock overhead and made it more dangerous
from day to day. As a "mucker," it was necessary for
him to do much of his work ahead of the timbering—that
is, he must remove the ore thrown down by the blasting,
before the timbers could be placed in position to protect
him. The very nature of mining is such that the working
places of the miners and "muckers" are constantly under-
going changes. These changes are necessarily accompanied
with dangers to the workmen, notwithstanding careful in-
spection and protection by the master. The "safe place"
rule can be applied only in a qualified sense. It is the

duty of the master to keep these working places in as safe condition as he can, consistently with the reasonable and practicable carrying on of the business. The working places being necessarily dangerous, it is incumbent upon the master to provide for inspection, such inspection as will afford as full security as can reasonably be made practical in view of the nature of the work. But the very conditions of danger which impose the duty of careful inspection upon the master also impose a corresponding duty of care upon the servant.

The master has the right to suppose that the servant will be alert, and observe that diligence to detect and avoid dangers which a man of ordinary prudence would exercise for self-preservation, under like conditions. In the case of *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575, 581, 53 Pac. 657, 658, 41 L. R. A. 410, this court, speaking by Dunbar, J., said:

"While there is no gainsaying the rule that under ordinary circumstances the employe has the right to rely upon the fact that the master will furnish him a safe place to work and safe appliances, yet the law does not intend that this shall be a blind and unreasonable reliance, but that reasonable men shall exercise in a reasonable manner the faculties of which they are possessed."

It will be seen that the idea here expressed is absolutely at variance with that presented in the instruction hereinbefore quoted. In the case of *Olson v. McMurray Cedar Lum. Co.*, 9 Wash. 500, 502, 37 Pac. 679, 680, this court, speaking by Dunbar, J., used the following language:

"Men, when they are working around dangerous machinery, must notice. Their faculties and senses are given them for the purpose of self-preservation, and they must exercise them to a reasonable extent."

This language is plain and unequivocal, and absolutely inconsistent with the idea that the servant is not called upon to use "diligence in ascertaining the condition of his surroundings." What was said in the two cases just cited is especially applicable to one working in a mine where his working place is necessarily beset with more or less peril. In the case of *Steeples v. Panel etc. Box Co.*, 33 Wash., 359, 365, 74 Pac. 475, 476, this court said:

"It is true the plaintiff testifies that he did not know that the platform was without a guard, but a plaintiff cannot recover simply by making a statement of that kind, if, under the circumstances, it was his duty, as a reasonably prudent man, to have made such an examination as would have resulted in the desired information."

In the case of *Cully v. Northern Pac. R. Co.*, 35 Wash. 241, 77 Pac. 202, this court, at page 247, said:

"Granting a nonsuit is the next error assigned. The appellant seeks to invoke the rule in this case that it is the duty of the master to furnish the servant with a safe place in which to work. This rule, however, has no application to this class of employment. As was said in *Kath v. Wisconsin Cent. R. Co.* (Wis.), 99 N. W., at page 221: 'The place to work is being changed constantly, and is necessarily incomplete and dangerous; and the employe knows it, and accepts such risks as are ordinarily present in such operations;' citing *Porter v. Silver Creek etc. Co.*, 84 Wis. 418, 54 N. W. 1019; *Gulf etc. R. Co. v. Jackson*, 65 Fed. 48; *Moon Anchor etc. Mines v. Hopkins*, 111 Fed. 298; *Armour v. Hahn*, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440. To the same effect also is *Swanson v. Great Northern R. Co.*, 68 Minn. 184, 70 N. W. 978, . . ."

The doctrine here announced is particularly applicable to the case at bar. In the case now before us the plaintiff testified that he knew that "air-slacking" was constantly

going on in the ore and rock overhead, and that the same were liable to fall. This constant, insidious change going on as a result of the forces of nature, together with the changes being made by the blasting and removal of ore, necessarily carried with them dangers. Plaintiff admits that he knew of these matters—that he knew that the business was a dangerous one. To say that such a servant, with such knowledge, in such a working place, may put absolute reliance upon the assumption that his master furnishes him a safe place, is to announce a proposition the very statement of which would seem to refute its correctness.

As was said in *Jennings v. Tacoma R. etc. Co.*, 7 Wash. 275, 278, 34 Pac. 937, 938:

"No sane man is expected to act on an assumption which he knows to be false. It is a man's duty to exercise common sense when in the employment of a master, as well as any other time. The master has a right to rely upon the servant doing this."

A man of common sense could not assume a mining place to be safe, which, according to his own testimony, he knew to be overhung with ore, rock, and debris which was naturally and necessarily liable to be precipitated as a result of "air-slacking," blasting and removing of ore, and the law of gravitation.

In the case of *Bier v. Hosford*, 35 Wash. 544, 554, 77 Pac. 867, 871, this court said:

"Physical facts, apparent to individuals of the most ordinary understanding, particularly those things capable of sensation and touch, cannot be overcome or discredited by word of mouth. . . . Within the rule of law enunciated in *Christianson v. Pacific Bridge Co., supra,* respondent was not obliged, in the presence of apparent and obvious danger, to obey the alleged directions of Mrs.

Dick, her fellow-servant and companion feeder at the mangle, to rush the work unreasonably, thereby putting life and limb in jeopardy."

In *Bullivant v. Spokane,* 14 Wash. 577, 579, 45 Pac. 42, this language was used:

". . . when it plainly appears, as it does in this case, that the party who was injured could see and appreciate the peril to which he was exposed by his employment, it must be concluded as a matter of law that he accepted such peril as incident to his employment."

In the case of *Hoffman v. American Foundry Co.,* 18 Wash. 287, 51 Pac. 385, this court, speaking by Gordon, J., said:

"It is the duty of the master to furnish to the servant reasonably safe tools, machinery and appliances with which to work, and it is the servant's duty to exercise due care to avoid injury. These duties are reciprocal and exist by implication based upon the contract of employment. The implied duty of each is measured by the standard of ordinary care." . . . All machinery is more or less dangerous, and it becomes the duty of persons connected therewith *to familiarize and acquaint* themselves with the dangers incident thereto. . . . In the exercise of ordinary care and prudence he should either *have ascertained* the facts, or pursued a course known to be safe."

In *Danuser v. Seller & Co.,* 24 Wash. 565, 567, 64 Pac. 783, this court said:

"It is well established that the employer must furnish the employee with a safe place to work, but it is just as well established that the employee assumes the risks of apparent peril."

In *Robare v. Seattle Traction Co.,* 24 Wash. 577, 581, 64 Pac. 784, 785, this court, speaking by Dunbar, J., said:

"He [the servant] must necessarily have known that the tearing down and building up of an old structure of

this kind was a dangerous occupation. , . . In addition to this, he knew of the general condition of the road; knew that these ties had been sawed off at stated intervals for the purpose of driving these piles; and it was his duty to be careful under such conditions, whether he had heard the warning to be careful or not. . . . From the testimony of the respondent alone we are forced to the conclusion that he did not exhibit that *care and watchfulness* which he should have done under the circumstances, that the danger was apparent, and that the company was, therefore, not responsible for the damages which ensued."

The principle involved in the last case was similar to the one here. The work that was being done necessarily rendered the premises more or less unsafe. It will be noticed that the court said that *"it was his duty to be careful,"* and that the court found that he did *"not exhibit that care and watchfulness"* which he should have done. This language shows conclusively that it was the court's idea that there was some duty of "watchfulness" on the part of the servant, and that he must use some diligence to ascertain the whereabouts of the dangerous places and protect himself therefrom. It would seem in principle that a danger to the premises made by sawing off some of the timbers of the bridge which a servant was to walk over would not be very different from those occasioned in a stope or tunnel of a mine, by the processes of nature and the progress of the work of mining.

In the case of *Forbes x. Boone Val. Coal & R. Co.,* 113 Iowa 94, 84 N. W. 970, the supreme court of Iowa said:

". . . the servant, in accepting employment in a hazardous business, assumes such risks as are incident to the ordinary discharge of his duties, but not, of course, the risk of dangers arising from unsafe or defective machinery or surroundings, unless he has, or may be presumed to have had knowledge or notice thereof. If, however, he

knows of the master's method of doing business, hazardous though it be, and continues in the work, without objection, after knowledge of the character of the place or the condition of the appliances, he is deemed in law to have assumed the risk, and cannot recover damages if injury follows. . . . He had worked in coal mines for many years, and knew or must have known of the customs prevailing in these mines. If he did not know, it was because of his want of ordinary care and observation. . . . If he did not know thereof it was because of his supine neglect."

In the case of *Jones v. Florence Min. Co.,* 66 Wis. 268, 28 N. W. 207, 57 Am. Rep. 269, the supreme court of Wisconsin said:

". . . the danger resulting from leaving loose stones or ore in the roof or sides of the mine is a danger which the employer may well impose the duty of guarding against upon those working in the mine. Such danger is the direct result of their operations, and they are always on the ground, and have better facilities for knowledge when a danger of that kind exists, and for removing the same, than the pit boss or captain of the mine, and there would seem to be no ground for holding that the owner of the mine may not impose such duty upon the miners themselves."

In the case of *Cherokee etc. Min. Co. v. Britton,* 3 Kan. App. 292, 45 Pac. 100, the court said:

"While it was its duty to provide him with a reasonably safe place to perform the labor he was engaged in, it was only bound to exercise ordinary care in providing for the safety of the men engaged in the mine, so far as it could reasonably be expected. It was not an insurer against unforeseen accidents, which are liable to happen from the action of the weather, or the unanticipated slipping of earth, slate, coal or stone from the walls or roof of the mine."

In the case of *Finlayson v. Utica Min. etc. Co.*, 67 Fed. 507, at page 510, the court used the following language:

"It is the general rule that it is the duty of the master to exercise ordinary care to provide a reasonably safe place in which the servant may perform his services. . . . But this rule cannot be justly applied to cases in which the very work the servants are employed to do consists in making a dangerous place safe, or in constantly changing the character of the place for safety as the work progresses. The duty of the master does not extend to keeping such a place safe at every moment of time as the work progresses. The servant assumes the ordinary risks and dangers of his employment that are known to him, and those that might be known to him by the exercise of ordinary care and foresight. When he engages in the work of making a place that is known to be dangerous, safe, or in a work that in its progress necessarily changes the character for safety of the place in which it is performed as the work progresses, the hazard of the dangerous place and the increased hazard of the place made dangerous by the work are the ordinary and known dangers of such a place, and by his acceptance of the employment the servant necessarily assumes them."

In *Coal & Mining Co. v. Clay's Adm'r*, 51 Ohio St. 542, 38 N. E. 610, 25 L. R. A. 848, the court said:

"Here the place was not furnished, as in any sense a permanent place of work, but was a place in which surrounding conditions were constantly changing, and, instead of being a place furnished by the master for the employees, within the spirit of the decisions referred to, was a place, the furnishing and preparation of which was itself part of the work which they were employed to perform."

In the case of *Oleson v. Maple Grove Coal & Min. Co.*, 115 Iowa 74, 87 N. W. 736, the court said:

"The doctrine that the master must provide a safe place has no application to a case where the place becomes un-

safe during the progress of the work.   As to such danger, the law only requires reasonable care to employ competent men and provide suitable material. . . . The employe 'is bound to take notice of the ordinary operation of familiar natural laws, and to govern himself accordingly. Failing to do so, he takes the consequences.   He cannot charge such consequences upon the master, when he can see that which is open and apparent to a person of ordinary intelligence.' "

In *Petaja v. Aurora Iron Min. Co.,* 106 Mich. 463, 64 N. W. 335, 66 N. W. 951, 58 Am. St. 505, 32 L. R. A. 435, the supreme court of Michigan said:

"The claim of the plaintiff is that the master did not furnish a safe place to work.   In our opinion, this place where the men were at work was an incident of mining. It was a result of the common work of the miner and the trammer, both of whose labor combined to make it.   After the miner had loosened the ore and the trammer had removed it, it was ready for the timber men, who followed up when notified, putting in sets, which enabled the process of mining to be carried further.   The undisputed evidence shows that the trammers and miners had not put the newly opened space in condition for the timber men and that the miners had not caused them to be notified that their services were required."

In the case of *Knight v. Cooper,* 36 W. Va. 232, 14 S. E. 999, the supreme court of that state said:

"If, as he states on the second trial, the clearing away of fallen slate for the setting up of props was one of the things he had to do as a miner, then that was one of the ordinary hazards incident to his dangerous employment."

In the case of *Ohio etc. R. Co. v. Pearcy,* 128 Ind. 197, 27 N. E. 479, the court said:

".   .   .   and the employee is charged with the knowledge of such defects as he would have ascertained by the exercise of reasonable care and *diligence* in this behalf."

It will be seen by these cases that the exercise of diligence on the part of the servant to ascertain and protect

against dangers that are liable to occur is regarded as one of his duties. Respondent's counsel cite and apparently rely much upon the case of *Union. Pac. R. Co. v. Jarvi,* 53 Fed. 65, but the decision of that case was made by the same court which decided the case of *Finlayson v. Utica etc. Min. Co.,* hereinbefore cited, and in the latter case the distinction was clearly pointed out between the facts of the *Jarvi* case and those of a case like the one at bar. We think the instruction given by the trial judge, as hereinbefore quoted, was, as to the first portion thereof indefinite, uncertain, and confusing, and as to the last portion thereof, an incorrect statement of the law.

Some other of the instructions are open to criticism, but what we have said regarding the one above quoted we think will afford a sufficient guide upon a new trial as to all. As to the sufficiency of the evidence, we express no opinion. Owing to the large amount of incompetent evidence and the erroneous theory upon which the case was tried and the jury instructed, we feel that a new trial should be had.

The judgment of the honorable superior court is reversed, and the case remanded for a new trial.

MOUNT, C. J., CROW, and RUDKIN, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.

DUNBAR, J. (dissenting)—I dissent. On the first proposition, in relation to the admissibility of testimony, while the rule of a particular mine—if by rule is meant a regulation or law governing the operation of such mine only—would doubtless be inadmissible for the purpose of tending to prove or establish the rules in another mine, the whole testimony shows clearly that it was elicited and admitted for the purpose of proving a general custom of the mines in that locality, and of what was generally

conceded to be the duty of miners, muckers and inspectors, or shift bosses. This is plainly shown by the form of the question itself, for the question was not, what was the rule of any particular mine—there being several in that locality—but "generally among the Coeur d'Alene mines," showing conclusively that it was a general custom among miners that was sought to be proven. And, even if the question could possibly be considered so narrow, the answers to the question, which are not set forth in the majority opinion—and it is the answer to a question which constitutes prejudice, and not the question—make no attempt whatever to show a rule of any mine, but simply to prove what was expected of certain workers. The following excerpts from the testimony of the witness illustrate this idea:

"Q. What is a miner? A. Well, a miner is a man that is supposed to take care of himself under ground. . . . Q. What is a mucker? A. A mucker is one who shovels and sorts the ore. Q. Now, what is the difference between a miner and a mucker, if any? A. A miner is supposed to take care of the ground and bar it down and make it safe for the mucker, and the mucker is supposed to come in and clear the dirt up after it is broken down," etc.,

all without reference to any particular mine. Certainly, if it was a custom in mines generally for muckers to rely on some one else to test all walls under which they worked, the respondent had a right to show that general custom on which he relied, to defend himself against the charge of contributing to his injury by not exercising the caution which an ordinarily prudent man would exercise under the circumstances.

Nor can I agree with the second proposition, that the court erred in giving the instruction set forth in the ma-

jority opinion.   In my opinion it was nothing but the announcement of the universally accepted rule, that the servant has a right to rely upon the presumption that the master will furnish him a reasonably safe place in which to work; and if he has a right to rely upon it, then there is no duty of inspection on his part.   The court instructed the jury, that the servant, in entering into a hazardous employment, assumed the usual risks of the servant, and those which are apparent to ordinary observation; that, when he accepts or continues in the service with knowledge of the character of obstructions from which injury might be apprehended, he also assumes the hazard incident to the situation; and further, that, as to those which are not obvious, assumed by the employee, if the master had exercised reasonable care to guard against the defective condition of structures and appliances, he would still not be liable, and they would be classified as dangers that were apparent to observation.   Now, the portion of the instruction which is objected to does not state that the burden is not imposed upon the servant under any circumstances to use diligence, for that portion of the instruction is with reference to defects in the structures or appliances, and to defects only.   In fact, there is no question involved in this case about assuming any other kind of risks than a hidden defect, or a defect in the place which was furnished the respondent in which to work.

The excerpts from the opinion in *Anderson v. Inland Tel. etc. Co.,* 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410, must be interpreted in the light of the subject under discussion, and it is as true now as it was then that it is a duty incumbent upon reasonable men to exercise, in a reasonable manner, the faculties of which they are possessed.   But, in that case, it was found that it was the

duty of the lineman, who was injured while climbing a telephone pole by coming in contact with a charged wire, to inspect the poles and wires, and that in the performance of his duty he was equipped with apparatus for that purpose; and it would, therefore, have been nothing but a reasonable exercise of prudence to have examined the wire before touching it. But, in this case, the duty of inspection rested with the mine owners.

The next case cited, *Olson v. McMurray Cedar Lum. Co.*, 9 Wash. 500, 37 Pac. 679, was a case where the injury was caused by the plaintiff getting his fingers mixed up with some live rollers, with which he was working in a sawmill. There a man was working around dangerous machinery, where the danger was palpably obvious, and where he must have known that, if he did not work with circumspection, he would be hurt. Hence, we said, and said properly, that, under such circumstances, men's faculties and senses are given them for the purpose of self-preservation, and they must exercise them to a reasonable extent.

The case of *Steeples v. Panel etc. Box Co.*, 33 Wash. 359, 74 Pac. 475, was where the plaintiff fell off of a platform, on which it was his duty to work, and where there was no railing on one side—where he had worked about the premises for two months, and had been on this platform on prior occasions. It was simply held there that that was an obvious peril, which he ought to have taken notice of; and there could not very well have been any other holding in the case. The statement quoted—that the plaintiff would be bound under the circumstances, if it was his duty as a reasonably prudent man to have made such an examination as would have resulted in the desired information—can have no bearing on

this case; for it is well established here that, so far as the plaintiff's work was concerned, it had nothing to do with the wall above him, and it is also equally well established that the duty of inspection was not imposed upon him.

*Jennings v. Tacoma R. etc. Co.*, 7 Wash. 275, 34 Pac. 937, was a case where an employee of the motor company undertook to push a car out of the building, where the door through which he had to pass was only three and one-half inches on each side wider than the car; and, instead of taking hold of the end of the car to push it out, he took hold of the side of the car, and when he came to the door he undertook to push himself through with the car, and was, of course, caught and hurt between the car and the door. It would be difficult to establish any parallel between that case and the one at bar; and so with all the other cases from this court relied upon by the appellant. These were all cases written by the writer of this dissenting opinion, and can readily be distinguished from the case at bar. They were all cases where the employees were hurt by reason of their negligence with regard to the thing which hurt them, when they were working with the thing which hurt them, and, consequently, must have had their attention called to the danger, the danger being obvious, and hence the duty of care devolved upon them.

But the distinction between the principles involved in those cases and the one at bar seems to me to be so plainly marked that it should not be overlooked. In this case there is no question of working with dangerous tools or around dangerous machinery, or of failing to exercise ordinary judgment in the transaction of the work, or of refusing to exercise the ordinary faculties of the mind; for the respondent was not hurt with anything with which he was working, nor did the manner of his work affect, in

the least degree, the misfortune which overtook him. Hence, the inapplicability of the cases cited. This distinction is very clearly announced in *Kelley v. Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273, where, in the course of the opinion, the court said:

". . . the plaintiff was employed, at the time of the accident, in running a tunnel in defendant's mine. He was doing this work under the immediate supervision and direction of John Sheehan, the foreman and manager of the mine. Sheehan was not working in the mine with plaintiff. The plaintiff was not engaged in creating a place, on his own judgment and at his own risk. He assumed the risks naturally attendant upon driving the tunnel. It was the duty of defendant to keep that part of the tunnel or place already created safe, by whatever reasonable means were necessary. If the plaintiff had been injured while in the actual work of drilling or blasting in the face of the tunnel he was driving, he may have had no claim on the defendant for damages; for these were risks he assumed as a miner. But he did not assume the risk of defendant's failure to keep that part of the tunnel or place already created reasonably safe and secure. . . . He assumed the risks incident to the work in front of him, and not the risks of defendant's failure to properly care for that part of the tunnel or place behind him, which he had completed, and turned over to the care and control of the defendant."

It would be difficult to distinguish this case from the one at bar upon principle, and, as will be seen, they are almost identical on questions of fact. This case was cited with approval by Judge Morrow, in the case of *Bunker Hill etc. Min. Co. v. Jones,* 130 Fed. 813, another case of injury in a mine. In that case it was said:

"If the jury believed the testimony on the part of the plaintiff, the safety of his employment depended upon the proper timbering of the stope above and immediately adjoining the place where he was set at work. He was not

employed as a timberman, but as a miner and machine-man, or driller. It was no more a part of his duty to inspect the timbering above him, or the condition of the rock in the chamber above, according to the custom in that mine, than it would have been to inspect the track on the tunnel floor, or the cars in which the ore was carried out. Other men were detailed for that part of the work. The shift boss, whose orders he was obliged to obey, indicated the place in which he was to work; . . . He entered upon the performance of his duties, and was warranted in the assumption that the necessary precautions had been taken by the defendant to prevent the caving and falling of rock from the stope above."

And so it may be said here. This man was not employed even as a miner, who outranks him, but as a humble mucker, whose duty it was to keep his head down to his work and pay attention to that, and that only. There is no question involved here of obvious danger or dangerous machinery, or want of exercise of ordinary care on the part of the respondent, or anything of that kind. It must, in the nature of things, outside of the custom which was shown in this case, be the custom and the duty of mine owners to inspect these mines, so far as the caving of walls over the miners is concerned. There can be no shirking of that responsibility. According to the majority opinion, there was a joint duty or responsibility of testing here. Such a theory as that would prevent a recovery by unfortunate victims in mines under any and all circumstances. For, if they did inspect and were mistaken in their judgment about the danger, they could not recover, for the reason that the duty of inspection devolved upon them. If they did not inspect, they could not recover, because their duty was to inspect. Considering the character of the employment, and the character of the people who are employed in mines, it is the last place where

courts ought to begin to relax the rule of a safe place to be furnished to employees. This doctrine of safe place to employees, under conditions such as are shown in this case, is the doctrine that is sustained by every state in the Union, and by the courts of every civilized country, and both precedent and right demand that it should be continued in force.

The judgment should be affirmed.