[No. 1047.  Decided November 15, 1893.]

George A. Jennings, *Respondent*, v. Tacoma Railway and Motor Company, *Appellant*.

PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE.

In an action for damages by the conductor on a cable car for injuries received by him in pushing a trail car from the power house so as to attach it to the grip car, it was shown that the track outward from the power house was on a slightly upward incline, requiring vigorous pushing to get a car out; that there was an open space under the track in the power house, and that the men pushed the cars by walking along a plank placed on the side of the track; that the doorway through which the cars had to pass from the house allowed but three and a half inches between the car and the pier on the side; that plaintiff in pushing out the car took hold of one of the uprights on the side of the car, and, failing to let go when he came to the doorway, was caught by the car and the walls of the pier, and was badly injured; that plaintiff had been recently employed, had never done this work before, and had not been informed

of the danger.  *Held,* That he was guilty of contributory negligence, as the danger was apparent.

*Appeal from Superior Court, Pierce County.*

*Crowley & Sullivan,* for appellant.
*O'Brien & Robertson,* for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—This is an action for damages brought by the respondent, George A. Jennings, as plaintiff, against the Tacoma Railway and Motor Company, in the city of Tacoma.

Respondent, at the time of the accident which caused his injury, was working for appellant as a conductor.   On the 12th day of November, 1891, while engaged in the duty of conductor on what is known as the "dummy" or "grip" car, he went into the power house of the company to push a trail car from the power house out and along the track which went through the doorway.   This car, after being pushed out, was to be attached to the dummy car, and run along the line of the cable railway.   There was no way to attach the power to the trail car to get it out of the power house, and it had to always be pushed out by hand.   According to respondent's testimony, the track outward was on a slightly upward incline, and it had to be pushed rapidly to force it far enough on the curved track to attach it to the dummy.   The doorway was about eight feet one inch in width, and the car which was pushed out was about seven and one-half feet in width, so that it would be seen that there was only about three and one-half inches on each side between the car and the walls of the doorway, or pier, which was about eight feet wide.   There was an open space under the track so that the car had to be pushed out by taking hold of the side of it, and a plank was run along the side, for the men to stand on while they

were pushing it.    The usual practice of the men was to push the car as rapidly as possible until they came to this pier and then let go, pass around the pier, and seize the car again on the other side.    The respondent had been in the employ of the company for five days as conductor, but this was the first day he had been on that line, and the first day he had attempted to run out the trail car.    In pushing it out he took hold of one of the uprights on the side of the car, and in pushing failed to let go when he came to the doorway, and was caught by the car and the walls of the pier, and was badly injured.    He brought this action for damages against the company, setting up the facts, alleging negligence of the company in the construction of its track and in not notifying him of the danger; alleging his damages to be $15,000.    The company answered, denying negligence on their part, and alleged contributory negligence on the part of plaintiff.    On the conclusion of plaintiff's testimony, the appellant moved the court for a non-suit, which motion was denied, and duly excepted to. The trial was then had, which resulted in a verdict in favor of plaintiff for $2,500, and a motion for a new trial was made, and refused, and the appellant brings the case here for review.

For the purpose of this case we need go no further than to examine the testimony of the respondent, for it is a well settled principle of law that negligence is a mixed question of law and fact.    There are certain acts which the law declares to be negligent.    These are questions of law for the court to pronounce upon.    Whether the commission of these certain acts is proven, is a question of fact for the jury to determine; and the same thing may be said of failure to do certain things, or to perform certain duties which the law imposes.    Taking the testimony of the respondent to be literally true, we fail to find anything that indicates negligence on the part of the defendant.    The

plan of its power house may not have been the best that could have been devised; but it was the plan which they saw fit to adopt, and so long as it could mislead no one, and there were no lurking hidden dangers, but everything about it was open and transparent, they had a right to adopt it.

It is claimed by the respondent that the rule that, where a servant enters upon employment, "he assumes the usual risk and perils of the service," as applied to the facts of this case, still gave the respondent the right to assume that the master had furnished him a safe and convenient place in which to perform the services required of him.    That proposition is no doubt correct, but the assumption cannot be relied upon after actual knowledge to the contrary is brought home to the mind of the servant.    The assumption will control only where the danger is not apparent.    No sane man is expected to act on an assumption which he knows to be false.    It is a man's duty to exercise common sense when in the employment of a master, as well as any other time.    The master has a right to rely upon the servant doing this.    It is contended by the respondent that the company ought to have notified him of this danger.    We think the company had a right to presume that no caution was necessary to a person of ordinary prudence and intelligence; that it is not a reasonable supposition that any man of ordinary size will attempt to force himself through a space three and one-half inches in width between a moving car and a brick wall.    The company had a right to suppose that the smallest imaginable modicum of prudence would suggest to the man to let go when he came to the wall.    If the space had been wider at the entrance and had narrowed as it progressed, or anything about it had been hidden or concealed, it would have been different, but such was not the case.    It was in open daylight at noon time; it showed upon its face the utter folly of such an attempt.

Had the space. been ten, or twelve, or fourteen inches, a man might readily have been deceived, and have been led into trouble; but under the circumstances of this case, where the respondent says he saw the situation; that he was directed by no superior in the execution of the work, but that he simply did not notice what he was doing, we are forced to conclude that he was guilty of gross negligence, and that it would be inequitable to hold his employers responsible for his heedlessness and negligent acts.

The judgment will, therefore, be reversed, and the cause remanded with instructions to grant the non-suit asked for by the appellant.

ANDERS, HOYT, SCOTT and STILES, JJ., concur.