[No. 4850.   Decided January 31, 1905.]

WILLIAM WOODS, *Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

MASTER AND SERVANT — RAILROADS — NEGLIGENCE — INJURY TO BRAKEMAN THROUGH FALL FROM CAR—UNUSUAL CONSTRUCTION OF FOREIGN CAR — ASSUMPTION OF RISK — NONSUIT — EVIDENCE— SUFFICIENCY. In an action against a railroad company for personal injuries sustained by a brakeman in falling from a foreign car received for transportation, through the fact, as claimed, that the hand-grab on top of the car was within three inches from the end of the car instead of further back, as usual, and that the de-

[1]Reported in 79 Pac. 309.

fendant negligently failed to notify the plaintiff of such fact, it is error to refuse a nonsuit where it appears that the plaintiff was an experienced brakeman, and had seen and knew of the receipt of cars somewhat similarly constructed, and where the position of the hand-grab was apparent as soon as he reached the top of the car, and he did not fall at that time, but in attempting to rise, the hand-grab being of no assistance in rising, and there being nothing out of repair about the car; since he assumed the risk upon seeing the situation, which was equivalent to notice, and the company's duty to inspect foreign cars for defects, or unusual construction which is not open and apparent, does not establish any negligence under the circumstances.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 16, 1903, upon the verdict of a jury rendered in favor of the plaintiff in an action for damages sustained by a brakeman in falling from a car. Reversed.

*James F. McElroy* and *B. S. Grosscup,* for appellant.
*Benson & Hall,* for respondent.

HADLEY, J.—This action was brought to recover damages for injuries received by respondent while working as a brakeman in the railroad yards of appellant, at Seattle. Respondent had just climbed to the top of the rear car in a moving section of nineteen freight cars. As he was in the act of rising, after reaching the top of the car, the speed of the engine was suddenly checked, and the consequent jerk caused him to lose his balance and fall. He fell off the car, and received severe injuries about the foot. The car from which he fell was a circus car which had been received by appellant from another line of road.

The complaint charges, that all reasonably safe freight cars, and all freight cars in general use in the state of Washington, and throughout the United States, are provided with hand-grabs on the tops of the cars, which are,

in nearly all cases, fastened at least twelve inches from the ends of the cars, and generally fifteen or more inches therefrom; that, upon the car from which respondent was thrown, the hand-grab was negligently and dangerously placed within three inches of the end of the car; that appellant had possession of the car two days immediately preceding the time respondent was injured, and that it knew, or by the exercise of reasonable care could have known, that said hand-grab was dangerously near the end of the car, but that appellant neglected to notify respondent thereof; and that he was not aware of the same until the time he was injured.

The answer avers, that respondent was familiar with the nature of his duties as switchman and brakeman, and was familiar with appellant's business of receiving into its yards, at Seattle, cars of other roads of various styles of construction; that the style of construction of the circus car mentioned was as open and apparent to respondent as to any of the officers or agents of appellant, and that the car was in good order and condition. The cause was tried before the court and a jury, and a verdict was returned in favor of respondent. Judgment was thereupon entered for respondent, and this appeal is from the judgment.

It is assigned that the court erred in refusing to grant appellant's motion for nonsuit at the close of respondent's case, and, also, in refusing, at the close of all the testimony, to withdraw the case from the jury and enter judgment for appellant. It is the contention of appellant that the evidence showed no negligence upon its part. It is appellant's duty to receive and transfer cars from other lines of railroad. This duty is enjoined by statute, and is in pursuance of the constitution of this state. See

§ 13, art. 12, Const. of Washington, and §§ 4318 and 4319, Bal. Code. Respondent admits that such is appellant's duty, and that it is, also, required to receive cars of different construction from that of its own; but that the duty rests upon appellant to inspect all cars received, and to warn its employees against dangers from any unusual construction. There is no contention that the car in question was in any way out of repair. Negligence is predicated entirely upon the manner of construction, in the placing of the grab-bar, and upon appellant's omission to notify respondent thereof.

The ladder upon this car was at the end, whereas the ladder upon the ordinary Northern Pacific car is at the side. The grab-bar upon Northern Pacific cars is usually located fifteen inches or more from the end of the car, while upon this car it was about three inches. The evidence shows that certain other cars are, in the particulars mentioned, constructed similarly to this circus car; such is true of refrigerator and fruit cars, and, also, of Armour & Co. cars. Respondent says he has not observed all of these, but he has seen the refrigerator cars. He thinks, however, that the hand-grab upon those he has seen was usually located from six to eight inches from the end of the car. He has had a number of years' experience as a brakeman, and his testimony shows that, during that experience, he has observed that cars of construction similar to this one are received and transferred from other lines. The peculiar danger which he urges from the situation of the hand-grab in this instance is that it was so near the end that it did not enable him to reach forward and pull himself upon the car, as if it had been located further from the end. He says, if it had been located further from the end, he would have been forward

upon the car when rising, and that, when he lost his balance, he would have fallen upon the car, and not upon the ground.   His testimony shows, however, that the situation was open and apparent to him when he reached the top of the ladder.   He saw the location of the grab-iron and took hold of it, but at the same time took hold of the running board to help himself forward.   He admits that the grab-iron was of no assistance to him in rising, and would not have been if located further forward, its only use being to assist in pulling himself upon the car.   It was after he was upon the car, and while undertaking to rise, that the accident happened.

When respondent saw the situation, as he ascended the ladder, he then assumed the risk, as one of the incidents to his employment.   If the grab-bar had been out of repair, and its condition not apparent, and if he had been injured by reason thereof, the case would have been different.   The duty rested upon appellant to inspect foreign cars to see that no hidden dangers, such as want of repairs, involved its employees; and, if the original construction were such as confronted the employee with unusual and probably dangerous conditions, which were not apparent to him, doubtless the same duty would rest upon appellant to inspect even foreign cars as to such unusual construction, and to warn employees thereof.   We are unable to see that any negligence of appellant appears from the evidence.   The car was received in the course of appellant's duty as a common carrier.   As such it, from time to time, received cars of different construction, and respondent knew that such was the fact, particularly in relation to the location of the hand-grab.·   When he saw the situation, he was as fully informed thereof as if he had been previously notified by appellant.   With such

full knowledge, in either case, he must have assumed
the risk attendant upon that particular construction.

In *Michigan Central R. Co. v. Smithson,* 45 Mich. 212,
7 N. W. 791, the same principle was involved. At the
ends of the cars were what are known among railroad men
as "deadwoods." The defendant's cars in that case were
supplied with what are called "single deadwoods," while
the foreign car had "double deadwoods." The plaintiff
in the case was injured while attempting to couple the
foreign car to one of his own road. He urged that the
use of the double deadwoods was unusual and dangerous,
and that his employer was negligent in permitting their
use upon the foreign car without notifying its employees
thereof. Judge Cooley, who wrote the opinion, said:

"But we have had produced for our inspection on the
argument a model of the double dead-woods which caused
the injury, and it seems impossible to give to the coupler
any better or more effectual notification of their presence,
and of the difference from those belonging to the defend-
ants than their very form necessarily gives of itself. The
difference is very marked and striking, and it is quite im-
possible to couple the double dead-woods, or to approach
them for the purpose with any degree of attention with-
out observing it. This is so whether the coupling is done
in the day-time or night-time; for in the night every
switchman has his lantern with him, or should have it on
all occasions. If therefore a switchman were to declare
that he had attempted to couple the double dead-woods
without noticing how they differed from the cars of de-
fendant, the conclusion would be inevitable that he had
gone heedlessly in the performance of a duty requiring
great care, and that he had not allowed his eyes to inform
him what was before him. Moreover the business of the
road was of itself a notification that many differences re-
quiring attention in coupling were to be encountered by
switchmen and brakemen. The Michigan Central is a

great common way for the cars of all the railroad companies of the country, and every man in employ of the defendant, if he has ordinary intelligence, is perfectly cognizant of the fact. He knows, too, that the cars of the several railroad and transportation companies differ, and that at one time or another all these differences may appear in the cars he may be called upon to couple or uncouple. Every train is likely to have several kinds, and he cannot assume as he passes from one to another that the two will be alike; much less that the whole train will be. To notify him specially of the differences would not only be troublesome and expensive, and oftentimes, as above explained, confusing, but it would be a work of supererogation; for any man capable intelligently of performing the duty would be no wiser after the duty than before; and a man who would not heed the information the very nature and course of the business would impart to him, would be protected by no notice. The best notice is that which a man must of necessity see and which cannot confuse or mislead him; he needs no printed placard to announce a precipice when he stands before it."

The above remarks seem to be peculiarly applicable to the conditions in the case at bar. As Judge Cooley reasoned in that case, so in this one, the very sight of the grab-bar itself, lying immediately before respondent as he started to climb upon the top of the car, was the most effectual notification which he could have received of its location, and of the situation which he was required to meet. See, also, *Thomas v. Missouri Pac. R. Co.,* 109 Mo. 187, 18 S. W. 980; *Kohn v. McNulta,* 147 U. S. 238, 13 Sup. Ct. 298; *Pierce v. Bane,* 80 Fed. 988; *Baldwin v. The C. etc. R. Co.,* 50 Iowa 680.

The cases cited by respondent involved out-of-repair conditions of the foreign car, as well as matters of original construction, and, as we have already intimated, it is the duty of the receiving company to inspect and guard

against defects of the foreign car from lack of repairs, and which may not be open and apparent to the employee. No out-of-repair conditions being present in the case at bar, the said authorities do not seem to reach the point now before us.

For the foregoing reasons, we think, no negligence of appellant appears, and we believe the court erred in not withdrawing the case from the jury, and in not granting judgment for appellant. The judgment is reversed, and the cause remanded with instructions to enter judgment for appellant, dismissing the action.

MOUNT, C. J., and FULLERTON, and DUNBAR, JJ., concur.