(No. 5368. Decided July 29, 1905.)

JAMES LEE, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents.*[1]

MASTER AND SERVANT—NEGLIGENCE—ASSUMPTION OF RISK—HAULING HAND-CAR BEHIND TRAIN. A bridge carpenter of six months experience in railroad work who undertakes to "hook on" or haul a hand-car behind a freight train by hand, assumes the risk of being jerked off the car, as an open and apparent one, although he acts upon the orders of his foreman, under earnest protest against so doing, and upon assurances that it was safe; since the undertaking was so extremely hazardous as not to justify his reliance upon the master's superior knowledge or to forego the risk of discharge on disobedience of the order.

Appeal from a judgment of the superior court for King county, Morris, J., entered April 26, 1904, upon the verdict of a jury rendered in favor of the defendant by direction of the court, dismissing an action for personal injuries sustained in hauling a hand-car behind a freight train. Affirmed.

*Walker & Munn, Robert Welch,* and *R. W. McClelland (George H. Walker,* of counsel), for appellant. It is only in very rare instances where contributory negligence and assumed risk are questions of law. *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799; *Graham v. Mc-*

1Reported in 81 Pac. 834.

*Neill*, 20 Wash. 466, 55 Pac. 631, 72 Am. St. 121, 43
L. R. A. 300; *Steele v. Northern Pac. R. Co.*, 21 Wash. 287,
57 Pac. 820; *Hencke v. Babcock*, 24 Wash. 556, 64 Pac. 755;
*Jordan v. Seattle*, 26 Wash. 61, 66 Pac. 114; *Mischke v. Se-
attle*, 26 Wash. 616, 67 Pac. 357; *Christianson v. Pacific
Bridge Co.*, 27 Wash. 582, 68 Pac. 191; *Crooker v. Pacific
Lounge etc. Co.*, 34 Wash. 191, 75 Pac. 632; *Jancko v. West
Coast Mfg. & Inv. Co.*, 34 Wash. 556, 76 Pac. 78; *Currans
v. Seattle etc. R. & Nav. Co.*, 34 Wash. 512, 76 Pac. 87;
*Allen v. Northern Pac. R. Co.*, 35 Wash. 221, 77 Pac. 204;
*Thoresen v. La Crosse City R. Co.*, 87 Wis. 597, 58 N. W.
1051, 41 Am. St. 64. The servant's duty to obey was im-
perative, and he had a right to rely upon assurances of safety.
*Keating v. Pacific Steam Whaling Co.*, 21 Wash. 415, 58 Pac.
224; *Christianson v. Pacific Bridge Co., supra; Coan v. Marl-
borough*, 164 Mass. 206, 41 N. E. 238; *Green v. Western
American Co.*, 30 Wash. 87, 70 Pac. 310; *Goldthorpe v.
Clark-Nickerson Lum. Co.*, 31 Wash. 467, 71 Pac. 1091;
*Grout v. Tacoma Eastern R. Co.*, 33 Wash. 524, 74 Pac. 665;
*Slack v. Harris*, 200 Ill. 96, 65 N. E. 669; *Illinois Steel Co.
v. Ryska*, 200 Ill. 280, 65 N. E. 734; *Malott v. Hood*, 201
Ill. 202, 66 N. E. 247; *Thomas v. Raleigh etc. R. Co.*, 129
N. C. 392, 40 S. E. 201; *Thompson, Adm'r v. Chicago etc.
R. Co.*, 14 Fed. 564; *Atchinson etc. R. Co. v. Bancord*, 66
Kan. 81, 71 Pac. 253; *Gulf etc. R. Co. v. Newman* (Tex.
Civ. App.), 64 S. W. 790; *International etc. R. Co. v. Gait-
anes* (Tex. Civ. App.), 70 S. W. 101; *Bane v. Erwin*, 172
Mo. 306, 72 S. W. 522; *Illinois Steel Co. v. Schymanowski*,
162 Ill. 447, 44 N. E. 876; *Chicago etc. R. Co. v. Lund-
strom*, 16 Neb. 254 20 N. W. 198, 49 Am. Rep. 718.

*James F. McElroy* and *B. S. Grosscup*, for respondents.

Root, J.—Appellant was working for respondent railway
company, along its line, as a bridge carpenter, and had been
so doing for a period of six months prior to the accident here-
inafter mentioned. On the 5th day of December, 1901, while

engaged as aforesaid with a crew of men under the company's foreman, respondent Herndon, near a place called Deming, appellant and said crew were directed by the foreman to get upon a hand-car and "hook on" to the rear of the caboose of a freight train, to be hauled to Sedro-Woolley, another station on said railroad line. The "hooking on" was by means of two men on the hand-car catching hold of the rear of the caboose with one hand and holding to the handle bar of the hand-car with the other, and thereby pulling said hand-car along behind the train. When the foreman told appellant to do this, the latter, suspecting it to be dangerous, earnestly protested against so doing; but being assured that it was safe, and that it was necessary in order to reach Sedro-Woolley in time, as required by the company, he complied with said order. While they were so "hooked on" and being drawn along by said freight train, appellant was, by the motion of said train, "jerked or hurled" from the hand-car to the ground, sustaining serious injuries. He brought this action to recover damages therefor. The first trial resulted in a verdict in his favor. A new trial was granted. Upon the second trial, at the close of appellant's case, a challenge to the evidence, and a motion for judgment in favor of defendants, were interposed and sustained by the court. From this judgment appeal is taken to this court.

Appellant's counsel argue, with exceptional ability, that the case was one for a jury, and cite numerous decisions in support of their contention. Many of these cases, however, involved questions of contributory negligence rather than assumed risk. Theoretically there is a clear distinction between these defenses. Practically, there is sometimes a marked difference and sometimes not. The case at bar involves a question of assumed risk. The law in this state is firmly established to the effect that a servant assumes the risk of obvious and apparent dangers attendant upon his work. When appellant was told to "hook on" to the caboose, did he know, or by the exercise of ordinary intelligence and observation could

he have known, that there was danger, in so doing, of serious injury? If this be answered in the affirmative, then it must be held that he assumed the risk of that danger.

It appears from the evidence that appellant had been working for respondent company as bridge carpenter along its railway line, for six months prior to this accident. He had done similar work elsewhere to at least some extent. Six months' experience along a railway line in operation would afford any person of ordinary intelligence a general knowledge of the movements of freight trains thereupon. The cars upon such a train are connected in such a manner that there is necessarily much "bumping" and "jerking" as the train is in motion. It is scarcely too much to say that this is a matter of common knowledge. It is certainly well known to those working upon or about railway lines where such trains are frequently passing. Such persons could not avoid perceiving these facts by the common, ordinary use of their natural faculties. Under the undisputed evidence of this case, it must be presumed that appellant knew of this "bumping" and "jerking," As his own arms and body were to form the connection between such train and the hand-car, he would know that these irregular movements of the train would frequently occasion sudden and great strains, and tend to pull him from the hand-car. This danger would be obvious to any one of ordinary perception. In the remarks of the trial court, in passing upon the challenge and motion for judgment, we find the following apt observations:

"He knew just as well as Mr. Herndon knew, just as well as anybody could know, what the palpable and ordinary result would be of a man using himself as a human coupling pin. It seems to me there cannot be any escape from it, that the ordinary and usual thing would be just exactly what has happened in this case, that somewhere along on the route of travel of that hand-car and that freight train, that there would be a sudden diminution of the speed or a sudden increasing of it, or some jar, or something of that kind, that would put him in a position of great danger."

The force of these suggestions must readily appeal to one's reason. Appellant may not have known just how he would be injured, or whether or not he would for a certainty meet with a catastrophe on that trip. But as a man of ordinary intelligence, familiar in a general way with the movements of freight trains and hand-cars, he did know that he was courting danger every moment he permitted his body to serve as a car-coupler while the train was in motion. The probability of serious injury was apparent at all times.

It is not a case of relying upon the superior knowledge of the master. However much the master or foreman knew about this danger, and however many assurances of safety he may have given, the fact remains that the danger was open, apparent, and obvious to appellant. In his complaint, appellant speaks of this service as "very hazardous." It would seem that no one could conceive of it as being otherwise. It also appears from the complaint that the foreman's reason for having the men "hook on" to the freight train was to get to Sedro-Woolley more quickly. This would indicate an understanding, such as any one might naturally have, that a freight train would travel more rapidly than a hand-car. The greater the speed of the train, the more rapid would be the movements of the handle bar on the hand-car, the more pronounced the "bumping" and "jerking" of the cars, and the greater the danger to the human coupling link. A moment's contemplation of these matters could not fail to impress appellant with the dangers of his undertaking. That he undertook this task under the orders of the foreman does not change the rule of law. A servant is always supposed to be working under orders of the master—actual or implied. Neither does the case come within the rule applicable where the servant, relying upon a promise to repair or correct a dangerous situation, acts upon the definite, distinct orders of the master at the time, and is injured while so doing.

It is argued that appellant might have been, and probably would have been, discharged if he had not obeyed the fore-

man's command.  Such is always the position of a servant.
He has his choice of assuming the obvious dangers of
the work and getting the compensation for his labor, or of
refusing to do the work under the existing conditions and
running the risk of being discharged.  The law does not com-
pel him to work for any certain person, or to obey any orders.
But if he elects so to do, he thereby subjects himself to the
law applicable to the *status* he thereby creates.  The assump-
tion of the risk of open and apparent dangers is imposed by
law upon one occupying that *status*.  The facts established
by the evidence in this case are such that we do not think
any reasonable mind can believe appellant not to have real-
ized that he was running the risk of great danger when he
"hooked on" to the train.  In fact, his complaint alleges
that he "suspected" danger and protested against the under-
taking.  In the light of all these facts, the action of the trial
court in sustaining the challenge to the evidence and in grant-
ing judgment for defendant was correct.  The case is con-
trolled by principles recognized and established in this state
by many decisions of this court.  *Week v. Fremont Mill Co.,*
3 Wash. 629, 29 Pac. 215; *Jennings v. Tacoma R. & Motor
Co.,* 7 Wash. 275, 34 Pac. 937; *Olson v. McMurray Cedar
Lumber Co.,* 9 Wash. 500, 37 Pac. 679; *Bullivant v. Spo-
kane,* 14 Wash. 577, 45 Pac. 42; *Hoffman v. American
Foundry Co.,* 18 Wash. 287, 51 Pac. 385; *Anderson v.
Inland Telephone etc. Co.,* 19 Wash. 575, 53 Pac. 657, 41
L. R. A. 410; *Brown v. Tabor Mill Co.,* 22 Wash. 317, 60
Pac. 1126; *French v. First Avenue R. Co.,* 24 Wash. 83,
63 Pac. 1108; *Danuser v. Seller & Co.,* 24 Wash. 565, 64
Pac. 783; *Robare v. Seattle Traction Co.,* 24 Wash. 577, 64
Pac. 784; *Bier v. Hosford,* 35 Wash. 544, 77 Pac. 867;
*Woods v. Northern Pac. R. Co.,* 36 Wash. 658, 79 Pac. 309.

Had the case gone to the jury a verdict favorable to de-
fendants would have been the only one legally possible.  A
verdict in favor of plaintiff upon such evidence could not be
legally upheld.  As a matter of law, the evidence defeated

plaintiff's right of recovery. There was consequently no logical or proper course for the trial court other than that adopted.

The judgment of the superior court is affirmed.

MOUNT, C. J., CROW, RUDKIN, and FULLERTON, JJ., concur.