[No. 7231. Decided August 14, 1908.]

ELLA CAVANESS *et al.*, *Appellants*, v. MORGAN LUMBER
COMPANY, *Respondent*.[1]

MASTER AND SERVANT—NEGLIGENCE—SAFE APPLIANCE—EVIDENCE—
SUFFICIENCY. In an action for the death of a fireman on a logging
engine, who jumped when the train ran away on a steep grade, there
is no sufficient evidence of negligence on the part of defendant, and
a nonsuit is properly granted, although there was evidence tending
to show that the rails were light, not entirely even and somewhat
worn when put down, that while the cars were of standard make,
the brakes could not be set while the train was in motion, that the
brake blocks were worn, and the engine lighter than some engines,
where there was no evidence that the defects rendered the appliances
unsafe, but use for a year had demonstrated their safety; since it
is not negligence to fail to use the best possible equipment.

Appeal from a judgment of the superior court for Pierce
county, Reid, J., entered October 1, 1907, in favor of the
defendant, upon granting a nonsuit at the close of plaintiffs'
evidence, in an action for damages for the death of a fireman
employed on a logging train. Affirmed.

*Ellis, Fletcher & Evans*, for appellants.
*William P. Reynolds*, for respondent.

FULLERTON, J.—W. M. Cavaness was killed while in the
employ of the respondent as a locomotive fireman, and this
action was brought on behalf of his widow and minor children
to recover damages for his death. The plaintiffs were non-
suited at the conclusion of their evidence, and appeal from
the judgment entered. The respondent is engaged in the
business of manufacturing lumber at the town of Lester, in
this state. As a part of its equipment, it owns and operates
a logging road which extends from its mill back into the
hills to certain timber tracts, the particular branch of the
road in question having a length of some two miles. Cavaness

[1]Reported in 96 Pac. 1084.

had been in the employ of the respondent company for about three years prior to his death; his work theretofore, however, had been principally in the mill proper, although he had worked in the woods at different times. On the day of his death he was firing the logging engine. In the afternoon of that day, on a homeward trip with a load of logs, the train got out from the control of the engineer, and the train crew, fearing the train would leave the track from excessive speed, jumped therefrom. The engineer and brakeman got off safely, but the fireman was instantly killed.

The allegations of negligence relied upon for a recovery were, that the road over which the train was operated was built very light, with small, uneven, irregular rails, and in an uneven and irregular manner; that the cars had brakes on one end only, and that these could not be operated while the train was in motion, but must be set before the cars were started, and that the brakes were old, worn, broken, and much out of repair, and of little or no benefit for holding the cars when set as tight as they could be set; that the engine used was too light and inadequate for the work required of it, owing to the steep grade; and that the appliances generally were insufficient, defective, and inadequate for safe operation on the grade in question. There was no allegation that the train was overloaded at the time of the accident, nor was it alleged that any mismanagement or other negligence on the part of the train crew caused the accident, the allegation of negligence being confined entirely to the defective condition of the equipment.

The evidence tended to show that the grade of the track for some distance from the mill towards the timber was comparatively level, but increased rapidly as the timber was approached, the grade reaching in some places as high as 5 and 7 per cent. The road was laid with light rails not of a uniform size, and did not present an entirely even surface, being, as the witness expressed it, "A little bit waving." Nor were the rails new when laid down, but were worn by use else-

where, presenting a surface more round than flat. The cars were ordinary logging trucks covered with a platform. One of them had brakes at one end only. The brake levers did not extend above the top of the car platform, and were operated by means of a brake-staff, which was inserted into the socket in the lever or drum around which the chains were wound, which connected with the brake beams. These could be reached from the ends of the cars only, and could not be operated at all while the train was in motion. One of the sprocket wheels holding the drum had two or three of its sprockets broken, and the others somewhat worn. The brake blocks also were worn on all of the brakes, in some instances down to about half of their original thickness. The engine was of standard make and weighed twenty tons.

It was further shown that the train had made four trips on the day of the accident prior to the one on which it was allowed to run away. Three of these trips carried down two loaded cars, and on the other, two loaded cars and an empty on which the men working in the woods rode to the mill. Two cars were all that were carried when the train got from under the control of the engineer. Whether on that trip anything more than the ordinary load was carried is not shown, but it did appear that a rain storm came on while the cars were being loaded, and that the track was wet when the train started. The witnesses testify that the brakes were set in the usual manner before starting. The engineer felt the train getting from under his control immediately after it started. After vainly endeavoring to control it he reversed the drivers, and turning to Cavaness said to him, "I guess it is a case of having to jump." Cavaness replied that he would not jump until he had seen the engineer jump. The engineer thereupon jumped off, and Cavaness followed. The train ran down until it reached the more level track, when it stopped unharmed, still carrying its load of logs.

On the foregoing facts, the trial judge held that the appellants had shown no cause for recovery, and it seems to us that

its judgment must be affirmed.   It was not shown that any of the defects pointed out in the equipment of the road rendered it unsafe for the purposes for which it was intended. True, it was shown that it did not have the best possible equipment, but no rule of law requires it to have such in order to avoid liability to a servant injured thereon.   Reasonably safe appliances are all that is required.   It is not negligence *per se* to use a railroad rail on a logging road smaller than the size used on transcontinental tracks, nor is it negligence *per se* to use those that are worn, nor those of different sizes. Nor is it negligence *per se* to use cars of standard make, although the brakes may not come above the top of the car and must be set or loosed while the cars are at a standstill.   Nor must the brake blocks be kept new all the time.   The real question in every case is, are those that are in use reasonably safe?   In the case at bar there is no evidence that the defects complained of rendered the appliances unsafe for the uses for which they were intended.   On the other hand, the contrary is proved by the most satisfactory of all evidence, actual demonstration by use for over a year.   The argument that the engine was too light for this grade could be made against any engine the company might procure.   A light engine cannot of course take down so large a load as a heavier one, but in the range of its capacity it is just as safe as a heavier one.   The immediate cause of the runaway is only a matter for conjecture, but it was probably caused by loading too heavy for the wet track.   But this is not charged as negligence in the complaint, and could not in this action be a ground for recovery, even had it been shown that the loading had been done by persons rendering the respondent responsible to the fireman for injuries resulting therefrom.

As we find no error in the record, the judgment will stand affirmed.

HADLEY, C. J., CROW, and ROOT, JJ., concur.