[No. 11994.   Department Two.   February 25, 1915.]

NALVANA BJORNSEN, *as Administratrix etc., Appellant,* v.
NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

MASTER AND SERVANT—INJURY TO SERVANT — NEGLIGENCE — SAFE PLACE TO WORK—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. No action lies for the death of an employee of two years' experience in unloading coal cars at the company's bunkers, caused by his fall into the bunkers, where it appears that the cars, of usual trapdoor construction, were driven above the bunkers, and it was necessary, by reason of the swollen condition of the trapdoors as a result of dampness, to force the doors with a crowbar, that he had been warned against the danger of standing on the coal while forcing the doors, and while working in this manner at one of the doors, it suddenly opened and carried the employee with the mass of coal into the bunkers.

SAME—SAFE APPLIANCE AND METHODS—COMMON USE. Negligence cannot be imputed from the use of coal cars with trapdoors liable to become swollen and difficult to open, when they are the class of cars commonly used by railway companies for such purposes, the doors of which commonly become swollen; since an employer is entitled to make use of the appliances common to the prosecution of his business, and is liable for injury resulting therefrom only in case the appliances and methods used are inherently dangerous and the dangers are concealed from the employees.

PLEADING—NEW MATTER IN REPLY—TIME FOR—STRIKING—DISCRETION. In an action for the death of an employee unloading coal cars at a bunker, alleged to have been caused by the use of unsafe cars, whereby the employee fell into the bunker when the trapdoor of the car suddenly opened, in which the answer set up contributory negligence and assumption of risks, new matter set up in plaintiff's reply after the case was called for trial, to the effect that defendant had caused the plaintiff to work for a longer period than sixteen

[1]Reported in 146 Pac. 575.

hours, in violation of the Federal statute, introduced a new element of damages, which would require time for preparation to meet; and, therefore, it was not an abuse of discretion on the part of the court to strike the same, in the absence of a motion for a continuance.

MASTER AND SERVANT—FEDERAL EMPLOYER'S LIABILITY ACT—VIOLATION—HOURS FOR WORK. The violation of the Federal employer's liability act in requiring an employee to work over the time permitted by the act, does not render an interstate carrier liable for an accident to an employee, unless it be alleged and proved that the violation of the act was the proximate cause of the accident.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered September 19, 1913, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action for wrongful death. Affirmed.

*Frank H. Kelley* and *Ralph Woods*, for appellant, contended, *inter alia*, that plaintiff was entitled to have the fact go to the jury that decedent had been working overtime, as showing the condition of his mind and body at the time of the accident. *Republic Iron & Steel Co. v. Ohler*, 161 Ind. 393, 68 N. E. 901; *Great Northern R. Co. v. Couture*, 14 Quebec K. B. 316, 7 Am. & Eng. Ann. Cas. 190. If decedent was chargeable with contributory negligence, that fact, under the Federal employer's liability act, might serve to diminish, but could not defeat, the recovery. *Schlemmer v. Buffalo, R. & P. R. Co.*, 220 U. S. 590. As to assumption of risk, it was decedent's duty to discharge the car of its cargo with the means at hand, if his employer provided no other and safer means, and he ought not be charged with all the responsibility of consequent injury, and was entitled to have the question of voluntary assumption of risk submitted to the jury. *Sandidge v. Atchison, T. & S. F. R. Co.*, 193 Fed. 867; *Central Vermont R. Co. v. Bethune*, 206 Fed. 868; *New York, N. H. & H. R. Co. v. Vizvari*, 210 Fed. 118; *Louisville & N. R. Co. v. Lankford*, 209 Fed. 321.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for respondent.

FULLERTON, J.—The appellant, as administratrix of the estate of John Bjornsen, brought this action against the respondent, Northern Pacific Railway Company, to recover damages claimed to have been suffered by the death of Bjornsen, which death she alleged was caused by the negligence of the railway company. On the trial of the action, at the conclusion of the evidence, a challenge to its sufficiency was interposed by the railway company, which the court sustained. Judgment was thereupon entered to the effect that the appellant take nothing by her action. This appeal is prosecuted from the judgment so entered.

The evidence tended to show that the deceased was, at the time he met his death, and had been for some two years prior thereto, an employee of the railway company, engaged in the work of unloading coal cars at the coal bunkers of the railway company, situated at Tacoma, in this state. The coal bunkers were so constructed that the cars could be shunted over them on a railway track and the cars unloaded thereon through trapdoors, fitted either on the bottoms or the sides of the cars. On the day of the accident, a loaded coal car was shunted over the bunkers, having doors opening at the bottom of the car, some twelve in number, six being on each side. It was a car the body of which was made of wood, and when the catches or fastenings of the trapdoors were loosened, the doors would not open, owing to the fact that the damp coal had caused them to swell and bind upon their surroundings. This was not an unusual condition with this form of car, and iron bars were kept within reach to open the doors, which was done by forcing the bars down through the coal and hammering upon the door. When these doors failed to open after their fastenings were loosened, a coemployee of Bjornsen went after the bars with which to force them. Returning with two of them, the men climbed upon the car and proceeded with the work on opposite sides of the car. The coemployee, after opening four of the doors on his side of the car, noticed that Bjornsen was having no success; his bar,

because of having too sharp a point, would stick into the door when struck with any force. The coemployee thereupon handed Bjornsen his own bar, which Bjornsen undertook to push down through the coal. Seemingly, the point of the bar caught upon some projection before it reached the bottom of the coal, preventing Bjornsen from striking on the door. The coemployee got down from the car to ascertain what it had caught upon and whether the bar was pushed through the coal directly over the door, and while so ascertaining, Bjornsen struck the door with the bar, causing it to open. A few seconds later, Bjornsen fell through the opening with the falling coal into the bunkers below, a drop of some fifty feet, and received injuries from which he died shortly thereafter.

No one saw the position of the deceased at the time the trapdoor was opened. His coemployee testified that the deceased was standing on the coal when the bar was handed him, and inferentially it can be gathered that the deceased was so standing when the bar was pushed down through the coal, but the coemployee testified that he did not notice his position at the time the door was opened. It does appear, however, that cars of the same character and whose doors locked in the same manner had been previously unloaded by the deceased; that four of the trapdoors on this very car had been opened by the coemployee in the immediate presence of the deceased; and it appears, moreover, that the deceased was warned by the foreman, prior to his starting work on the car, not to stand on the coal when he drove open the doors, and that this warning was repeated to him by the coemployee, when the coemployee climbed down from the top of the car as before related.

At the conclusion of the evidence, the foregoing facts appearing, the trial court sustained a challenge to the sufficiency of the evidence to warrant a recovery, and directed a judgment to the effect that the appellant take nothing by her action.

The appellant sought to bring her action within the Federal employer's liability act (35 U. S. Stat. 65), and to that end alleged that the respondent was a common carrier engaged in commerce between the several states of the United States and between such states and foreign countries, and that the deceased suffered his death while he was employed by such carrier in such commerce; alleging further, in addition to the facts showing the manner of the death, matters tending to the conclusion that the death was caused by the negligence of the railway company. For answer to the complaint, the respondent denied the negligence alleged, and pleaded affirmatively contributory negligence and assumption of risk. To the answer, the appellant replied denying the affirmative allegations therein, and concluded with the following matter:

"Plaintiff further says that the deceased was required or permitted to work in unloading cars and running the same out of the bunkers down the track for a longer period than sixteen (16) hours; to wit, for a period of about thirty (30) hours prior to the accident, and that he was not in a fit condition to do the work for which he was employed."

The complaint was served on April 21, 1913, the answer on May 8, 1913; and the reply on September 17, 1913, after the cause had been set for trial, and when the parties had appeared in court for the purpose of trial. On the service of the reply, the respondent's counsel stated that he had no objections to the filing of a reply denying the affirmative allegations in his answer, notwithstanding the reply was outside of the rule time, but did object to a reply containing the new matter, as it introduced a new element of negligence which he had not come prepared to meet. He thereupon moved to strike from the reply the affirmative matter, which motion the court granted. On the trial which followed, the court also refused to permit the appellant to introduce evidence tending to prove the matter alleged.

On the evidence permitted to be introduced by the court, we have no hesitancy in saying that no cause of action against the respondent was proven. There were no hidden or concealed dangers about the work, nor any defective construction of the car or unsafe condition of the place of the work which caused the accident. On the contrary, the accident was caused either by an accident or because the deceased failed to take proper care while performing the work, and this after warning had been given him both by the representative of the master and his coemployee of the particular dangers of the work. Moreover, the previous observation and experience of the deceased with like and similar cars, and the fact that four of the trapdoors of this very car had been opened before his eyes, must have made known to him all that any amount of instruction could have taught him concerning the dangers attending upon the work.

But it is said that it was negligence to use cars for hauling coal whose doors are liable to become swollen and fail to open when the ordinary fastenings are removed, and that some other and different method of opening them ought to have been devised. But it was shown that the cars used were cars commonly used by railway companies for like purposes, and that the trapdoors of such cars quite commonly became swollen so as not to open by the removal of the fasteners, particularly in wet weather or when loaded with damp coal; and it was not shown that there was any other method of forcing open the doors which would be attended with less danger than the method used. It was not, therefore, negligence in itself to use the cars. An employer can, without becoming an insurer against accidents to his employees, make use of the common appliances in the prosecution of his business. The question in such cases is not, would something else have been better, but is rather, are the appliances and methods used inherently dangerous and are the dangers concealed from the employees. But, as we say, this work had no pe-

culiar hazards attending it; it could be performed with safety by the exercise of but common and ordinary care.

Did the court err in striking the new matter contained in the reply? We think not. Unquestionably it sought to introduce a new element of negligence in the cause, and an element which the respondent was entitled to time within which to make preparation to meet. When the appellant sought to introduce it after the case had been called for trial, it was within the court's discretion either to refuse to permit it to be introduced, or grant a continuance that the respondent might have time to make preparation to meet it. Since the appellant did not ask for or desire a continuance, we can find no abuse of discretion in striking out the new matter.

Again, we think it may be questioned whether the matter as pleaded was sufficient in itself to permit a recovery even if proven. If we concede that sufficient is pleaded in the complaint and admitted by the answer to show that the deceased was, at the time of his death, employed by the carrier in interstate commerce, we think something more must be proven than the mere violation of the hours of service act to create a liability for an accident. It must be proven that the violation of the act was the proximate cause of the accident. This proof cannot be supplied by implication. It must be alleged and proven that the accident was directly attributable to the act of working overtime.

This is the view taken of the act by the supreme court of the United States in *St. Louis, I. M. & S. R. Co. v. Mc-Whirter*, 229 U. S. 265. There the court said:

"The Hours of Service Act was approved March 4, 1907, and is entitled 'An Act to promote the safety of employes and travelers upon railroads by limiting the hours of service of employes thereon.' Chapter 2939, 34 Stat. 1415. We are unable to discover in the text of the statute any support for the conclusion that it was the purpose of Congress in adopting it to subject carriers to the extreme liability of insurers which the view taken of the act by the court below imposes. We say this because although the act carefully provides

punishment for a violation of its provisions, nowhere does it intimate that there was a purpose to subject the carrier who allowed its employes to work beyond the statutory time to liability for all accidents happening during such period without reference to whether the accident was attributable to the act of working over time. And we think that where no such liability is expressed in the statute it cannot be supplied by implication. It requires no reasoning to demonstrate that the general rule is that where negligence is charged, to justify a recovery it must be shown that the alleged negligence was the proximate cause of the damage. The character of evidence necessary to prove such causation we need not point out, as it must depend upon the circumstances of each case. Conceding that a case could be presented where the mere proof of permitting work beyond the statutory time and the facts and circumstances connected with an accident might be of such a character as to justify not only the conclusion of negligence, but also the inference of proximate cause, such concession can be of no avail here, since the instruction of the trial court and the ruling affirming that instruction were based upon the theory that the mere act of negligence in permitting an employe to work beyond the statutory period created liability irrespective of the connection between the alleged negligence and the injury complained of."

See, also, *Schweig v. Chicago, M. & St. P. R. Co.*, 216 Fed. 750.

Our conclusion is that the judgment must stand affirmed. It is so ordered.

CROW, MAIN, MOUNT, and ELLIS, JJ., concur.