[No. 12524. Department One. August 20, 1915.]

## GUST SAINIS, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—METHOD OF WORK—ASSUMPTION OF RISKS. Although a railroad company's method of riprapping a stream may not have been the safest and best, in that the temporary track was built upon a foundation of brush, sand, and timbers and was shaky, the company is not liable for consequential injuries to a servant while unloading rock, where he had been engaged in such work for several days and the danger was open and apparent and the shaky condition of the track was well known to him.

SAME—NEGLIGENCE—INSUFFICIENT TOOLS. Evidence that derricks might have been used in unloading rocks in riprap work, does not establish an insufficiency of tools, where the company adopted the method of rolling the rocks off with line bars, which were in common use in such work.

SAME—NEGLIGENCE—SAFE PLACE TO WORK—ASSUMPTION OF RISKS. A railroad company using a temporary track on a shaky foundation for riprapping a stream is not liable on the theory of failure to furnish a safe place to work, where the dangers of the place were not hidden or obscure and the employee was experienced and was fully aware of whatever dangers there were.

SAME—NEGLIGENCE—SUFFICIENCY OF MEN—ASSUMPTION OF RISKS. A railroad company, engaged in riprap work, is not liable for negligence in failure to furnish sufficient men to roll a heavy rock off a flat car, where the plaintiff, after requesting help and being informed that there was none and that he and another were sufficient, undertook to roll the rock with line bars, the danger being open and apparent and well known to him.

SAME—ASSUMPTION OF RISKS—OBEDIENCE TO ORDERS — APPARENT DANGERS. In such a case, the statement of the foreman that they were strong men and able to roll the rock alone, does not constitute an assurance of the safety of the place so as to render the company liable for ordering the men into a place of danger, where the danger was as apparent to the plaintiff as to the foreman and he voluntarily continued in the work.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 14, 1914, upon the

[1]Reported in 151 Pac. 93.

verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in railroad construction work.   Reversed.

*C. H. Winders,* for appellant.

*Walter B. Allen* and *C. Liliopoulos,* for respondent.

Mount, J.—Action for personal injuries.   The defendant appeals from a judgment entered upon the verdict of a jury.   At the close of the plaintiff's evidence, the defendant challenged the sufficiency of the evidence and moved the court for a directed verdict, upon the ground that the plaintiff had failed to show any actionable negligence, and that the plaintiff had assumed the risks incident to his employment.   This motion was denied.

A number of assignments of error are made in the appellant's brief, but in view of our conclusion upon the question above stated, it will not be necessary to consider the other assignments of error.

The facts as shown by the evidence introduced on behalf of the plaintiff are as follows:  In April, 1913, the plaintiff was employed by the defendant, with a number of other men, to work upon a section of its railroad.   The plaintiff at that time was about 22 years of age.   His employment was working with a section crew in building what is commonly called riprap upon the bank of a stream along which a section of the line of railway of the defendant extended.   The method of doing this work was about as follows:   Brush was cut and placed in the water of the stream.   Sacks of sand were then placed upon this brush.   Railroad bridge timbers were then placed lengthwise upon the brush weighted with sand. Cross timbers were then placed upon these timbers, and bridge timbers were again placed lengthwise.   Ties were then placed across these timbers, and upon the ties rails were laid.   In this way a temporary road was built upon which cars were run for the purpose of unloading rock with which to riprap the bank of the stream.   The temporary road thus

constructed was only for the purpose of holding cars loaded with rock. Engines were not run upon this temporary track. A switch was built from the main line of the railroad, and engines were used to push the cars loaded with rock onto the temporary track, where they were left standing until required to be placed along the riprap work, when men with line bars would push the loaded cars to the place where they were to be unloaded.

The plaintiff, while he had been employed in section work for about two years, testified that he had never before unloaded rock with line bars. It is conceded that this temporary track was unsteady, and that the flat cars upon which the rock was loaded would shake more or less, especially when they were being unloaded. The plaintiff was engaged with other men in unloading these rocks, some of which were small, and others were large; some of them weighing two or three tons. After the plaintiff had been engaged in this work for several days and when some cars had been unloaded and were standing upon this temporary track, the plaintiff was injured while he and another man were endeavoring to roll a large rock from the flat car onto the riprap work. The manner of his injury was stated by him as follows:

"When we tried to put the line bars underneath the rock we lift it about, not exactly half way; then the rock was a big one, so it come back to us and knocked the line bars— the line bars get bended—the line bars was weak so it bend, so slip off from our hands and knock down on the deck and me fall backwards on some other rocks. . . . Q. At the time you are lifting that rock to unload it, how was the car, was it shaking or was it steady? A. The track was shaking and move like that (showing). Q. Just like that—and was that car stationed in the brush which was in the water at that time, or was it in solid ground? A. No. It was in the brush. Q. Was the track in the water? A. The track was build on the water, yes. Q. And the only foundation to that track—what were the foundations of that track outside of the brush—was there anything else? A. More brushes, sacks of sand and more timbers. Q. When you lifted the

rock the car was shaking, did you say? A. The car was shaking. . . . A. When we were trying to put the line bars underneath the rock and lifted it about half way, the rock was heavy and she came back to us and the line bars bended and the car pretty quick shaking. Q. Shaking, you mean? A. Yes. And the line bar get to bending and I could not hold it and my hand came around right straight out and I fell back on the rocks. . . . The line bar was in this side and my partner was that side and when I lift up about half way the rock was heavy and it come back this way and bend the line bars and the car got pretty quick shaking, too, and the line bar get bent and my hands come straight out this way (showing)."

The evidence further shows that the plaintiff fell with his back upon a rock which was lying behind him and caused a bruise on the back which finally developed into tuberculosis of the spine. His evidence also shows that, prior to his injury, he was a strong, healthy man.

The negligence alleged in the complaint may be summarized as follows: (1) That the method of doing the work was an improper and unsafe one. (2) That improper tools were furnished. (3) That the defendant failed to furnish the plaintiff with a reasonably safe place to work. (4) Failure on the part of the defendant to furnish the plaintiff with a sufficient number of men to perform the work safely. (5) That over his protests and notwithstanding his inexperience, well known to the defendant, the plaintiff was ordered into a place of danger, with assurances that the work could be safely performed.

We are satisfied that none of these allegations of negligence were proved sufficiently to show any actionable negligence. The respondent, in support of the first allegation of negligence, argues, that because the temporary track was built upon a foundation of brush and sand, and was shaky, and that the cars when being unloaded were shaky, that the method of doing the work was improper and unsafe. The plaintiff had worked upon this work for several days, and

numerous cars of rock had been unloaded in the same way. The size of the rock and the condition of the track and cars were open and apparent to the plaintiff. While it may be true that a perfectly solid track could have been built, and while it may be true that another method of unloading the rock would have been safer and more substantial, yet the defendant had a right to devise and use its own method which, if reasonably safe, and the danger was open and apparent, would not constitute negligence. In the case of *Jennings v. Tacoma R. & Motor Co.*, 7 Wash. 275, 34 Pac. 937, this court said:

"Taking the testimony of the respondent to be literally true, we fail to find anything that indicates negligence on the part of the defendant. The plan of its power house may not have been the best that could have been devised; but it was the plan which they saw fit to adopt, and so long as it could mislead no one, and there were no lurking, hidden dangers, but everything about it was open and transparent, they had a right to adopt it."

In the case of *Cavaness v. Morgan Lumber Co.*, 50 Wash. 232, 96 Pac. 1084, it was said:

"It was not shown that any of the defects pointed out in the equipment of the road rendered it unsafe for the purposes for which it was intended. True, it was shown that it did not have the best possible equipment, but no rule of law requires it to have such in order to avoid liability to a servant injured thereon. Reasonably safe appliances are all that is required."

It was not shown that there were any lurking dangers or hidden defects about the construction of this temporary track. Everything was open, and the danger was apparent to the plaintiff, as it was to the defendant. Many cars had been unloaded upon this track, and the plaintiff had participated therein, and knew the shaky condition of the track, and he knew the force necessary to roll a rock off a flat car. The appliances and the work were no doubt reasonably proper and reasonably safe.

The respondent seems to argue that there was an insufficiency of tools. But the evidence fails to disclose any such deficiency. There was some evidence to the effect that the rocks might have been unloaded with a derrick, or in some other manner. Witnesses on behalf of the plaintiff testified that sufficient tools were furnished for unloading these rocks. It is true the only tools furnished were the line bars, which were in common use in such work. The trial court took this question from the jury.

It is next argued that the defendant failed to furnish the plaintiff with a reasonably safe place to work. We have touched upon this question in the consideration of the first point. In the case of *Nordstrom v. Spokane & Inland Empire R. Co.*, 55 Wash. 521, 104 Pac. 809, 25 L. R. A. (N. S.) 364, we said:

"Considering the case now upon the contention of the appellant that the place was not reasonably safe: This could only be on the theory of some hidden, latent, or lurking danger, known to the master and not known to the servant, which it was the master's duty to warn the servant against, a most admirable rule when properly applied."

In *Le Claire v. Washington Water Power Co.*, 83 Wash. 560, 145 Pac. 584, we said:

"The first claim of neglect of duty on the part of the appellant is that it did not furnish Le Claire with a safe place in which to work. In the sense that there was some danger attending the rowing of a boat in the vicinity of the spillways, this claim has foundation in fact. But this alone is not the measure of an employer's liability. Such a rule would make the employer an insurer and liable in every case of injury, as there is hardly an employment in which a person can engage that has not some attendant dangers. Particularly is this true where the employee is engaged to work about a dam across flowing water, or about machinery, or in work requiring the use of edged tools, or in work in which the instrumentalities used in its performance necessitate the use of skill or care. But in none of these cases is the master liable for an injury to his employee, merely because he suf-

fers him to work about such places or with such instrumentalities. The employer's liability arises in such cases only where the dangers are hidden or obscure, and the employee is ignorant of them, or of such a degree of immaturity that he cannot be expected to appreciate or understand them. . . . Every employment has its own peculiar hazards, and the law does not hold the employer liable for such hazards as are ordinarily apparent and usually and naturally belong to the employment. These principles have been repeatedly laid down by this court, and, indeed, we think are not questioned anywhere."

See, also, *Bjornsen v. Northern Pac. R. Co.*, 84 Wash. 220, 146 Pac. 575.

It is plain, therefore, that there was no actionable negligence in furnishing the place where the plaintiff was injured, because, as we have said before, the dangers were not hidden or obscure, and the plaintiff was fully aware of whatever dangers there were. He knew the condition of the track, he knew that the cars were shaky upon the track, and having had several days' experience in unloading these rocks, he was aware of the dangers, if any, which surrounded him.

It is next contended that there was negligence in failing to furnish a sufficient number of men to safely perform the work. The evidence on this point was, that five or six men had been engaged in unloading this particular car; that after all the small rocks had been thrown off by hand, several large rocks remained upon the flat car to be rolled off by means of line bars. All the men except two were directed to get off the car and throw rocks away from the track so that the cars might be pushed out to the engine and be taken away. The plaintiff and the man who was working with him upon the car concluded that this particular rock was too large to be rolled off by them, and asked the foreman to send some more men to help them. The foreman looked at the rock and stated, in substance, that they were able to roll the rock off without help, and that there were no more men

to help them then.   Whereupon they proceeded to roll the rock and the plaintiff was injured.

In the case of *Grout v. Tacoma Eastern R. Co.,* 33 Wash. 524, 74 Pac. 665, in speaking to this question, we said:

"The allegation of the complaint to the effect that the company failed to furnish a sufficient number of brakemen to properly perform the services required in operating the train, does not state actionable negligence.   This was a matter plainly apparent to the brakeman employed, and as he continued in the service with knowledge of the fact, he assumed all the risks arising therefrom."

And in *Shore v. Spokane & Inland Empire R. Co.,* 57 Wash. 212, 106 Pac. 753, where the question was the sufficiency of the men engaged in the work, which was simple and uncomplicated, this court said:

"As stated above, the other grounds of negligence charged relate to the means or methods employed in stringing the wires, such as insufficiency of men, failure to tie the wire to every mast arm, the sagging of the wire, insufficiency of tools and appliances, the hurrying of the work, etc.   All of these matters were as well or better known to the servant than to the master.   The appellant candidly admitted that he was thoroughly familiar with the work and with the manner of doing it, and fully appreciated all the dangers incident to the hazardous employment in which he was engaged.   He knew that if he came in contact with the two wires while the wire he was stringing was grounded the result would be disastrous if not fatal to him.   His injuries resulted from dangers incident to his employment, which he clearly assumed.   It would be idle to cite decisions from this and other courts to that effect.  .  .  ."

The rolling of the rock off the car in this case was a simple operation.   The plaintiff knew that the rock was heavy and irregular.   He knew that the car was shaky, especially when they were rolling heavy rocks upon it; he knew that it might roll one way or the other if they did not control it.   In short, he was fully aware of all the dangers connected with the rolling of the rock, and the fact that he and an-

other man were unable to roll it off was as well known to him
as to his foreman. The mere fact that the foreman directed
them to proceed to roll the rock off was not actionable neg-
ligence.

It is next argued that, over the protests and inexperience
of the plaintiff, which was well known to the defendant, the
plaintiff was ordered into a place of danger with assurances
that the work could be safely performed. The only assurances
that the work could be safely performed were as stated
above, that the foreman told the plaintiff and his partner
that they were strong men and could handle the rock. There
were no assurances that the place was safer than it purported
to be. The plaintiff well knew the danger, and all the
dangers, in attempting to roll the rock from the car. We
find nothing in the record to indicate that any assurances
of safety were given to the plaintiff, except the mere state-
ment that he and the man helping him were big and strong
enough to roll the rock from the car. They apparently raised
the rock to where it would begin to roll, when they let it come
back upon their line bars, and by the rock falling back, caused
the plaintiff to fall backward and hurt himself upon another
rock. The danger, if any in this case, we think was clearly
assumed by the plaintiff. This court has said in many cases,
that where there are no hidden defects or latent dangers, and
where a servant voluntarily goes into the service, and con-
tinues therein, knowing the risks and dangers which are
obvious to ordinary observation or inspection, he assumes the
risk.

In the case of *Steeples v. Panel & Folding Box Co.*, 33
Wash. 359, 74 Pac. 475, we said:

"It will be conceded at the outset that it has been well
established in this jurisdiction that the law requires the mas-
ter to furnish a reasonably safe place for the servant to
work in; so that it will not be necessary to discuss the cases
cited to prove this proposition. It is also evident from the
testimony that a reasonably safe place was not furnished
for this servant to work in, and that the defendant was

guilty of negligence in that respect. But the pivotal question here is whether the danger was so apparent that the plaintiff assumed the risks of the employment, or whether he was guilty of contributory negligence."

And in *Jennings v. Tacoma R. & Motor Co.*, 7 Wash. 275, 34 Pac. 937, it was said:

"It is claimed by the respondent that the rule that, where a servant enters upon employment, 'he assumes the usual risk and perils of the service,' as applied to the facts of this case, still gave the respondent the right to assume that the master had furnished him a safe and convenient place in which to perform the services required of him. That proposition is no doubt correct, but the assumption cannot be relied upon after actual knowledge to the contrary is brought home to the mind of the servant. The assumption will control only where the danger is not apparent. No sane man is expected to act upon an assumption which he knows to be false. It is a man's duty to exercise common sense when in the employment of a master, as well as any other time. The master has a right to rely upon the servant doing this. It is contended by the respondent that the company ought to have notified him of this danger. We think the company had a right to presume that no caution was necessary to a person of ordinary prudence and intelligence; . . ."

And in *Olson v. McMurray Cedar Lumber Co.*, 9 Wash. 500, 37 Pac. 679, this court said:

"The dangers in this instance were apparent, and the law is well settled that an employee when he assumes his employment takes the risk of all apparent danger. This was the doctrine announced in *Week v. Fremont Mill Co.*, 3 Wash. 629 (29 Pac. 215), and *Jennings v. Tacoma R. & Motor Co.*, 7 Wash. 275 (34 Pac. 937), and is the doctrine of common justice and right between employer and employee, and the doctrine of common sense."

In *Brown v. Tabor Mill Co.*, 22 Wash. 317, 60 Pac. 1126, we said:

"The rule that an employee, on entering upon the duties of his employment, assumes all of the risks incident to such employment which are apparent and obvious, and which he

could by the exercise of common prudence avoid, is well settled in this state."

In *Jobe v. Spokane Gas & Fuel Co.*, 73 Wash. 1, 131 Pac. 235, 48 L. R. A. (N. S.) 931, we said:

"The servant assumes usually, as a matter of law, the risk of those ordinary dangers necessarily incident to the work, and only those. Whether he assumes the risk of unnecessary dangers imposed by the master's negligence, is usually a question of fact depending not alone upon his knowledge of the danger but upon its certainty, imminence, and obvious character, and upon his free and voluntary action in the premises as indicating an assent to the master's conduct and an acceptance of the consequent risk. Many cases make a distinction even more marked to the effect that the servant never assumes the risk of the master's negligence."

We are satisfied, therefore, that no actionable negligence was proved upon any theory of the plaintiff's case, and that whatever danger there was in connection with the work was plainly assumed by the servant. The lower court therefore erred in not sustaining the motion for a directed verdict.

The judgment is reversed, and the cause remanded to be dismissed.

Morris, C. J., Main, and Holcomb, JJ., concur.